435 A.2d 158

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael WHARTON.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Allen B. COLEMAN.

Supreme Court of Pennsylvania.

Argued Sept. 26, 1980.

Decided Sept. 24, 1981.

Steven H. Goldblatt, Deputy Dist. Atty., Ellen Mattleman, Asst. Dist. Atty., for petitioner.

Phyllis Subin, Leonard Sosnov, Asst. Defenders, Michael G. DeFino, Philadelphia, for respondent.

## ORDER

PER CURIAM:

The Court being equally divided, the orders are affirmed.

ROBERTS, J., filed an Opinion in Support of Affirmance. FLAHERTY, J., joins in the Opinion in Support of Affirmance of ROBERTS, J. O'Brien, C. J., joins in Parts, I, II, and V of the Opinion in Support of Affirmance of ROBERTS, J.

NIX, J., filed an Opinion in Support of Reversal.

LARSEN and KAUFFMAN, JJ., filed an Opinion in Support of Reversal.

## OPINION IN SUPPORT OF AFFIRMANCE

ROBERTS, Justice.

Pursuant to Pennsylvania Rule of Criminal Procedure 1101, two judges of the Court of Common Pleas of Philadelphia, in two separate cases, upheld the authority of the trial court to approve a defendant's motion to waive trial by jury despite opposition by the prosecution. In so doing, the courts properly held unconstitutional 42 Pa. C.S. § 5104(c), which inters this Court's Rule 1101 by granting the Commonwealth an absolute right to jury trial upon demand.

In urging the reversal of the trial courts' determinations, the joint opinion of Justices Larsen and Kauffman and the opinion of Mr. Justice Nix would both abdicate the exclusive constitutional responsibility of this Court to govern the practice, procedure and conduct of all courts of this Commonwealth and abrogate the essential constitutional authority of trial court judges to assure that trial procedures meet the requirements of due process.  Manifestly, 42 Pa. C.S. § 5104(c), which conflicts irreconcilably with this Court's Rule 1101, must be declared unconstitutional.  Hence, the orders of the trial court must be affirmed.

## I

Pa.Const. art. V, § 10 provides:

"(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts . . . .

.    .    .    .    .

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, . . . including the power to provide for . . . the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose.  All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions."

Acting upon this explicit rule-making power, and drawing upon the expertise gained in the performance of its constitutional obligation to supervise and administer the Commonwealth's unified judicial system, this Court has adopted and, where necessary, amended rules to govern practice and procedure in the courts of this Commonwealth.

Pa.R.Crim.P. 1101, adopted by this Court in 1968 and amended in 1973, governs the procedure by which criminal

cases are to be tried when an accused voluntarily elects to forgo his constitutional right to be tried by a jury. Rule 1101 provides:

"Waiver of Jury Trial.

In all cases, the defendant may waive a jury trial with the consent of his attorney, if any, and approval by a judge of the court in which the case is pending, and elect to be tried by a judge without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record...."

Pursuant to Rule 1101, an accused may be tried by a judge without a jury whenever the court approves a non-jury trial. When a defendant files a motion to waive trial by jury, that motion, like all other motions, is ruled upon by the court. As with other motions, it is the obligation of both the defense counsel and prosecuting attorney to bring relevant facts and considerations to the attention of the court. See, e. g., *Commonwealth v. Correa*, 485 Pa. 376, 402 A.2d 1011 (1979) (trial court denial of defendant's motion to waive jury trial affirmed); *Commonwealth v. Lee*, 262 Pa.Super. 280, 396 A.2d 755 (1978) and *Commonwealth v. Garrison*, 242 Pa.Super. 509, 364 A.2d 388 (1976) (same; record indicated "judge shopping" by defendant). The final determination to grant or to deny the motion is then made by an impartial judicial decision-maker removed from the passions of the adversary system.

Because this Court has exclusive constitutional authority to prescribe rules of procedure for the courts of this Commonwealth, procedural rules promulgated by this Court cannot constitutionally be abridged or modified by legislative action. Thus, in enacting 42 Pa. C.S. § 5104(c), which contravenes Rule 1101, the Legislature has impermissibly intruded upon the procedural rule-making authority exclusively granted to this Court by the Constitution of this Commonwealth. See *Wajert v. State Ethics Comm'n*, 491 Pa. 255, 420 A.2d 439 (1980); *In re Pa. C.S. § 1703*, 482 Pa.

522, 394 A.2d 444 (1978). See also *Garrett v. Bamford*, 582 F.2d 810 (3d Cir. 1978).

## II

### A.

It is obvious that Rule 1101 and 42 Pa. C.S. § 5104(c) cannot co-exist. The statutory grant to the prosecution of an unrestricted, unreviewable veto over the trial court's approval of a non-jury trial irreconcilably conflicts with Rule 1101, which provides that the trial court shall make the ultimate determination whether a non-jury trial is to be permitted.

The joint Opinion in Support of Reversal of Justices Larsen and Kauffman is flawed not only by its failure to acknowledge that Rule 1101 and 42 Pa. C.S. § 5104(c) cannot co-exist, but also by its failure to recognize that there exist both substantive and procedural rights. Like the Opinion in Support of Reversal of Mr. Justice Nix, the joint opinion proceeds from the faulty premise that any "right" conferred by statute must inherently be substantive and thus within the authority of the Legislature. If this assumption were correct, the Legislature could abolish any procedural rule adopted by this Court merely by enacting a contravening statute whose language confers a "right" upon a litigant.[1]

To permit such circumvention of this Court's rule-making power is to obliterate art. V, § 10 of the Constitution which grants this Court explicit, exclusive authority to govern practice and procedure in the courts of the Commonwealth. Further, to uphold such circumvention as constitutional on the ground that any right conferred by the Legislature is "substantive" is to ignore the jurisprudential distinction between rights which are "substantive" and rights which are "procedural," a distinction of historic and continuing vitality and one which gives meaning to this Commonwealth's constitutional separation of powers.

1. As quoted supra, Pa. Const. art. V, § 10(c) provides that this Court's procedural rules may "neither abridge, enlarge nor modify the substantive rights of any litigant . . . ."

B.

The Opinions in Support of Reversal mistakenly derogate the importance of procedure in our criminal justice system. In attempting to uphold as constitutional the Legislature's intrusion upon this Court's exclusive constitutional power to regulate the procedure of the courts of this Commonwealth, the opinions have erroneously translated "substantive" rights into "substantial" or "important" rights. They have made a right of procedure synonymous with "merely a procedural mechanism." Joint opinion, 435 A.2d at 171.

Trial by jury is, without doubt, an important and "substantial" right of the accused. However, jurisprudence, history and decisions of the Supreme Court of the United States and of this Court make unmistakably clear that the right to trial by jury is a right of procedure. Like other guarantees of the Sixth Amendment which are part of the procedure of a criminal trial, trial by jury has been deemed a valuable "procedure [which] is fundamental . . . a procedure [which] is necessary to an Anglo-American regime of ordered liberty." *Duncan v. Louisiana*, 391 U.S. 145, 149 n.14, 88 S.Ct. 1444, 1448 n.14, 20 L.Ed.2d 491 (1968) (accused's Sixth Amendment right to jury trial guaranteed in state courts by Fourteenth Amendment due process clause).

It is a basic principle of jurisprudence underlying criminal law and procedure that substantive law declares what acts are crimes and prescribes the punishment for their commission, while procedural law provides the means by which the substantive law is enforced. See *State v. Smith*, 84 Wash.2d 498, 501, 527 P.2d 674, 677 (1974); *In re Florida Rules of Criminal Procedure*, 272 So.2d 65, 65–66 (Fla.1972); Frank, Courts on Trial 103 (1949).

Trial by jury is a "means whereby justice, as expressed in legal principles, is administered," *Commonwealth v. Fowler*, 451 Pa. 505, 511, 304 A.2d 124, 127 (1973) (plurality opinion of Nix, J.), and hence a matter of procedure within this Court's power to regulate by rule. "The function of rules is to regulate the practice of the court and to facilitate the transaction of its business. This function embraces, among

other things, ... the prescribing of forms, modes and times for proceedings." *Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 635, 44 S.Ct. 220, 222, 68 L.Ed. 480 (1924) (Brandeis, J.). As stated by Thayer, A Preliminary Treatise on Evidence at the Common Law 199 (1898), "a mode of trial" is "a form of procedure; not law, in our sense of substantive law." See also Frankfurter & Corcoran, Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv.L. Rev. 917, 920 (1926) ("[o]ne of the procedural features ... [of] the administration of the criminal law is ... trial by jury"); Oppenheim, Waiver of Trial by Jury in Criminal Cases, 25 Mich.L.Rev. 695, 712 (1927) ("trial by jury ... is a method, a form, a process. It is a part of a criminal trial procedure...").

Many of the most important rights guaranteed by the Constitution are rights of procedure without which the substantive rights of life, liberty and property would have little meaning. The procedures which constitute due process of law, like the right of an accused to trial by jury, are not ends in themselves but means of safeguarding these substantive rights. As Justice Frankfurter observed, "[t]he history of American freedom, is, in no small measure, the history of procedure." *Malinski v. New York*, 324 U.S. 401, 414, 65 S.Ct. 781, 787, 89 L.Ed. 1029 (1945) (concurring opinion). In speaking of the constitutional right of the accused to be tried by a jury and upholding his right to waive jury trial, the Supreme Court of the United States has said:

"[P]rocedural devices rooted in experience were written into the Bill of Rights not as abstract rubrics in an elegant code but in order to assure fairness and justice before any person could be deprived of 'life, liberty, or property'."

*Adams v. United States ex rel. McCann*, 317 U.S. 269, 276, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942) (Frankfurter, J.).

Innumerable cases of the Supreme Court of the United States recount that trial by jury developed as a procedural safeguard for the accused against arbitrary and oppressive

law enforcement. See, e. g., *Ballew v. Georgia*, 435 U.S. 223, 229, 98 S.Ct. 1029, 1033, 55 L.Ed.2d 234 (1978); *Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 1905–06, 26 L.Ed.2d 446 (1970); *Duncan v. Louisiana*, 391 U.S. 145, 151–56, 88 S.Ct. 1444, 1448–51, 20 L.Ed.2d 491 (1968); *Singer v. United States*, 380 U.S. 24, 27–31, 85 S.Ct. 783, 786–88, 13 L.Ed.2d 630 (1965); *Adams v. United States ex rel. McCann*, supra, 317 U.S. at 276, 63 S.Ct. at 240.

"'[T]he history and debates of the constitutional convention will not be found to sustain the idea that the constitutional safeguards in question were in any sense established as something necessary to protect the state or the community from the supposed danger that accused parties would waive away the interest which the government has in their liberties, and go to jail.

There is not now, and never was, any practical danger of that.'

. . . . .

The record of English and colonial jurisprudence antedating the Constitution will be searched in vain for evidence that trial by jury in criminal cases was regarded as a part of the structure of government, as distinguished from a right or privilege of the accused. On the contrary, it uniformly was regarded as a valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the King and the arbitrary or partial judgment of the court." *Patton v. United States*, 281 U.S. 276, 295–97, 50 S.Ct. 253, 257, 74 L.Ed. 854 (1930), quoting with approval *Dickinson v. United States*, 159 F. 801, 820 (1st Cir. 1908) (dissenting opinion of Aldrich, J.). See The Federalist No. 83 (A. Hamilton) (jury trial is "the security of liberty"); 3 Farrand, Records of the Federal Convention (1911) at 101 (James Wilson) (jury trial bars "the oppression of government"), 221 (Luther Martin) (jury trial is "the surest barrier against arbitrary power, and the palladium of liberty"). See generally *Commonwealth v. Maxwell*, 271 Pa. 378, 114 A. 825 (1921) (detailed discussion of state constitutional provision);

Forsyth, History of Trial by Jury (1878); Plucknett, A Concise History of the Common Law (1956).

The Opinions in Support of Reversal not only ignore the history of trial by jury as a valuable procedure to safeguard the liberty of the accused but also ignore the legion of Supreme Court decisions which state forthrightly that trial by jury is a procedural device. See, e. g., *Bloom v. Illinois*, 391 U.S. 194, 208, 88 S.Ct. 1477, 1486, 20 L.Ed.2d 522 (1968) ("procedural protection" of jury trial constitutionally guaranteed in criminal contempt proceedings); *Id.* at 214, 88 S.Ct. at 1460 (Fortas, J., concurring) (jury trial "is a system of administration of the business of the State"); *Id.* at 211, 88 S.Ct. at 1487 (Harlan, J., joined by Stewart, J., dissenting) (right to jury trial "rule of procedure"); *Duncan v. Louisiana*, supra, 391 U.S. at 149 n.14, 88 S.Ct. at 1448 n.14 (jury trial "particular procedure [which] is fundamental"); *Adams v. United States ex rel. McCann*, supra, 317 U.S. at 280, 63 S.Ct. at 242 (choice between judge and jury trial is "choice of procedure"); *Territory of Hawaii v. Mankichi*, 190 U.S. 197, 217, 23 S.Ct. 787, 791, 47 L.Ed. 1016 (1903) (jury trial is "a method of procedure"). See also *Williams v. Florida*, supra, 399 U.S. at 112, 90 S.Ct. at 1911–12 (Black, J., joined by Douglas, J., concurring in part and dissenting in part) (defendant entitled to jury trial as part of "the procedure to be followed in criminal trials").

Likewise the Opinions in Support of Reversal ignore the repeated recognition by this Court that trial by jury in criminal cases is a procedure designed for the protection of the accused. See, e. g., *Terry Appeal*, 438 Pa. 339, 265 A.2d 350 (1970), aff'd sub nom. *McKeiver & Terry v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (right to jury trial procedural guarantee not constitutionally mandated in juvenile proceedings); *Commonwealth v. Maxwell*, 271 Pa. 378, 387, 114 A. 825, 828 (1921) (trial by jury is one of the "modes of procedure").

The error of confusing "substantive" and "substantial" rights, evident throughout both Opinions in Support of Reversal, has previously been recognized and criticized by the Supreme Court of the United States. In *Sibbach v. Wilson*

& *Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), the Court rejected a challenge to its power to adopt the federal civil procedure rules authorizing physical and mental examination of a party. In upholding the procedural rules as within the Court's rule-making authority, the Court stated:

> "If we were to adopt the suggested criterion of the importance of the alleged right we should invite endless litigation and confusion worse confounded. The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them."

*Id.* at 14, 61 S.Ct. at 426. Accord, *Schlagenhauf v. Holder*, 379 U.S. 104, 113–14, 85 S.Ct. 234, 240, 13 L.Ed.2d 152 (1964).

### III

By vesting exclusive, constitutional power in the Supreme Court to govern practice and procedure in the courts of the Commonwealth, the Constitution seeks to assure that the judicial system will be uniformly and efficiently administered. Because this Court is in constant touch with the administration of justice in all courts and is continuously in session, it has the expertise and ability both to adopt procedural rules and to supervise their implementation.[2] Thus, if and when problems arise in the interpretation or administration of the rules, the Court is able to respond promptly through revisions or amendments. See, e. g., *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977) (citing cases).

In adopting and subsequently amending Rule 1101, this Court acted pursuant to its constitutional obligation both to

2. The Supreme Court is aided in its task by the Judicial Council as well as by numerous committees which assist in the drafting of various rules, including Rules of Judicial Administration and Rules of Criminal, Civil, and Appellate Procedure. Committee recommendations of proposed rules are published in the Pennsylvania Bulletin for public comment. See Pa. R.J.A. No. 103. See generally Pomeroy, Pennsylvania Supreme Court Review, 1979-Foreword: The Pennsylvania Supreme Court in its First Decade Under the New Judiciary Article, 53 Temple L.Q. 613 (1980).

regulate the practice and procedure in the courts of this Commonwealth and to administer an efficient unified system of criminal justice. Amended Rule 1101 is in harmony with the purpose of our criminal rules—"to secure the just determination of every criminal proceeding . . . simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. . . ." Pa.R.Crim.P. 2.

## A.

Prior to the amendment of Rule 1101 in 1973, the rule provided that a defendant's waiver of jury trial was conditioned not only upon court approval, as under the amended rule, but also upon consent of the prosecutor.[3] Although the old rule did not require the prosecutor to state his reasons for refusing to consent, the rule might reasonably have been interpreted as requiring the prosecutor to act in good faith. See *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (consent requirement of federal rule to be exercised in good faith); *United States v. Panteleakis*, 422 F.Supp. 247 (D.R.I. 1976) (waiver permitted in interest of fair trial despite prosecutor's refusal to consent); *United States v. Schipani*, 44 F.R.D. 461 (E.D.N.Y) (1968) (same). See also Orfield, 3 Criminal Procedure Under the Federal Rules § 23.41 at 65 (1966). The rule was amended, however, to alleviate any problems in the interpretation or administration of the consent requirement. The amended rule makes it clear that, although the prosecutor may object to a waiver, the trial court—not the prosecutor—shall decide

---

**3.** Our sister states are almost evenly divided as to whether prosecutorial consent should be required for waiver of a jury trial. All states which do have such a requirement speak of the prosecutor's "concurrence" or "consent" as did original Rule 1101, not of an absolute right on the part of the prosecution to a jury trial as does 42 Pa. C.S. § 5104(c). Further, of the twenty-six states to adopt such a requirement, all but seven have done so through court rule, judicial decision or the state constitution. In none of the seven states which have done so by statute, does there exist a constitutional grant of exclusive rule-making power to the judiciary as there does in Pennsylvania. See Korbakes, Alfini & Grau, Judicial Rulemaking in the State Courts (American Judicature Society 1978).

whether a motion to waive will be granted.[4] Thus, the present rule fosters public accountability on the part of the prosecutor by encouraging him to state his reasons for objection and assures an impartial evaluation and determination of competing adversarial claims.[5] Cf. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977) (trial court must place on record its reasons for imposition of particular sentence).

## B.

Were the prosecution permitted by statute to insist that trials proceed before a jury despite court approval of a

4. The joint opinion of Justices Larsen and Kauffman states that 42 Pa. C.S. § 5104(c) was adopted "in order to compensate for the elimination of the Commonwealth's right to object to a defendant's waiver of jury trial," Joint opinion, 435 A.2d at 171. In addition to contradicting the joint opinion's assertion that the rule and statute are compatible, this statement clearly misperceives the import of amended Rule 1101. The amended rule does not eliminate the Commonwealth's right to object. Rather, it makes clear that the court must rule on the Commonwealth's objection. The rule subjects both the defendant's motion in support of waiver of jury trial, and the Commonwealth's motion in opposition, to an impartial judicial determination. Cf. Pa.R.Crim.P. 319 (plea of guilty must be accepted by trial court).

5. Commentators are virtually unanimous that government consent should not be a prerequisite for waiver of jury trial. See, e. g., Orfield, 3 Criminal Procedure Under the Federal Rules § 23.41, at 65 (1966); Orfield, Trial by Jury in Federal Criminal Procedure, 1962 Duke L.J. 29, 75 (1962); Broeder, The Functions of the Jury: Facts or Fictions?, 21 U.Chi.L.Rev. 386, 417 n.149 (1954); Oppenheim, Waiver of Trial by Jury in Criminal Cases, 25 Mich.L.Rev. 695, 712–13 (1927); Note, 51 Cornell L.Rev. 339 (1966). See also Uniform Rule of Criminal Procedure 511(a); A.L.I. Code of Criminal Procedure § 266 (Official Draft, 1930). But see ABA Standards Relating to Trial by Jury, Standard 15–1.2 (Approved Draft, 1978).

   The primary argument advanced in favor of government consent is that such a requirement affords protection against judges biased in favor of the accused. Adequate protection against biased judges, however, is provided through the procedure of recusal. See *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973). Further, it is manifestly inappropriate to our adversary system of criminal justice, which depends upon partisan advocacy on both sides of a case and impartial decision-making by a neutral, detached judge, to presume a greater likelihood of bias on the part of a judge than on the part of a prosecutor.

defendant's waiver of his constitutional right to jury trial, not only would the prosecution be able to "overrule" the court, but also the orderly administration of justice would be unnecessarily and unwisely burdened.

Increased demands would be made upon scarce judicial and administrative resources, and many more citizens would be called for jury duty. In Philadelphia alone there are approximately three thousand criminal trials each year. As a consequence of the defendant's waiver of his constitutional right to jury trial and the court's approval, eighty-nine percent of these trials are conducted without a jury.[6] If, in even a portion of these non-jury trials, the prosecution were to demand trial by jury, an enormous increase in expenditures would result.[7] Moreover, because jury trials take longer to conduct than non-jury trials, a marked increase in the number of jury trials would inevitably increase the already extensive case backlog in the courts. Such an increase would jeopardize the trial courts' ability to schedule trials in a manner that safeguards both the defendant's constitutional right to a speedy trial and society's interest in prompt adjudications of all cases reaching the courts.[8] See

**6.** In Philadelphia, the numbers of jury trials and non-jury trials in criminal cases for the past three years are as follows:

|      | Jury trials  | Non-jury trials | Total trials    |
| ---- | ------------ | --------------- | --------------- |
| 1978 | 357          | 2,607           | 2,964           |
| 1979 | 316          | 2,699           | 3,015           |
| 1980 | 336          | 2,852           | 3,188           |
| Total | 1,009 (11%) | 8,158 (89%)     | 9,167 (100%)    |

Annual Report of Philadelphia Court of Common Pleas.

**7.** The approximate daily cost of a jury trial in 1980 was $1500. In December, 1980, the Legislature increased juror reimbursement fees from nine dollars for each day of trial to nine dollars for each of the first three days of trial, and twenty-five dollars for each subsequent day. 42 Pa. C.S. § 4561(a). As a result, the daily jury trial cost for 1981 is $1500 for each of the first three days of trial, and almost $1700 for each day of trial thereafter. A jury trial is, of course, much more expensive than a non-jury trial not only because jurors must be reimbursed but also because a jury trial requires more—often days more—of a judge's time, as well as the services of support staff.

**8.** On January 5, 1981, in Philadelphia, notwithstanding the fact that less than 11% of all criminal trials were jury trials, see note 6 supra, the court of common pleas had a backlog of 28,147 cases, having

594

*Philadelphia Newspapers, Inc. v. Jerome*, 478 Pa. 484, 498, 387 A.2d 425, 432 (1978), dismissed for want of substantial federal question, 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979) (trial court control over court calendars "[e]ssential to the stability and efficiency of our state court system"); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 3.8 (Approved Draft, 1972); ABA Project on Standards for Criminal Justice, Standards Relating to Speedy Trial Part I (Approved Draft, 1968). Cf. *Terry Appeal*, 438 Pa. 339, 350, 265 A.2d 350, 355 (1970), aff'd, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (jury trial in juvenile courts "disruptive of the unique nature of the juvenile process"). See also *United States v. Braunstein*, 474 F.Supp. 1 (D. N.J. 1979) (waiver permitted in interest of fair and speedy trial despite prosecutor's refusal to consent).

## IV

Although the accused has a constitutional right to be tried by a jury, this right in no respect compels the conclusion that 42 Pa. C.S. § 5104(c) may constitutionally confer upon the prosecution a commensurate, absolute right to jury trial immune from judicial review. 42 Pa. C.S. § 5104(c) not only contravenes amended Rule 1101, adopted pursuant to this Court's exclusive procedural rule-making power, and unconstitutionally puts trial administration in the control of the prosecutor, but also denies the trial court essential constitutional authority, implicit in this Court's pre-amended Rule 1101, to assure fairness by requiring good faith conduct on the part of the Commonwealth. As the Second Circuit has recently admonished,

"[a] criminal prosecution, unlike a civil trial, is in no sense a symmetrical proceeding.

.    .    .    .    .

disposed of only 57% of its criminal cases and less than 36% of its civil cases in the preceding year (excluding family court and orphans' court divisions). See Statistical Summary of The Common Pleas and Municipal Courts of Philadelphia: December Term, 1980, Bulletin No. 81–23 at 2.

[I]n the context of criminal investigation and criminal trials, where accuser and accused have inherently different roles, with entirely different powers and rights, equalization is not a sound principle on which to extend any particular procedural device."

*United States v. Turkish,* 623 F.2d 769, 774–75 (2d Cir. 1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). Although the prosecutor and defendant are both litigants, only the defendant is on trial.

In agreeing or objecting to an accused's motion to waive trial by jury, the prosecutor, as the representative of society, has an obligation to act in the interest of a fair trial, and not merely for tactical advantage. However, because the prosecutor also occupies an adversarial role with adversarial responsibilities, and because our jurisprudence does not permit one party to judge his own cause, it is essential that the trial court make the ultimate determination whether the motion should be granted. As the Supreme Court of the United States has stated, "[f]air trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer." *In re Murchison,* 349 U.S. 133, 137, 75 S.Ct. 623, 626, 99 L.Ed. 942 (1955) (Black, J.).

The Opinions in Support of Reversal would authorize, for the first time in the history of the Commonwealth, the imposition by the prosecutor of his tactical preference for a particular trial procedure over a contrary determination by the trial court. In no other instance in our jurisprudence do we allow a litigant to impose his own determination on the court and the opposing party.

No justifiable reason has been or can be advanced for permitting the prosecutor to have an unrestricted, unreviewable veto over a trial court's ruling. To permit such a veto serves only to invite and to sanction prosecutorial overreaching and abuse of the judicial process. As Justice Cardozo wisely observed, "[a] system of procedure is perverted from its proper function when it multiplies impediments to justice without the warrant of clear necessity." *Reed v. Allen,* 286 U.S. 191, 209, 52 S.Ct. 532, 537, 76 L.Ed. 1054 (1932) (dissenting opinion).

## A.

Armed with its statutory power to "overrule" a defendant's court-approved jury trial waiver, the prosecution could decide to insist upon a jury trial only in certain cases. Such selective demanding of jury trials poses a substantial threat to the fair and equal administration of justice. For example, as in the trial of appellee Coleman, the prosecution could manipulate the judicial process by awaiting the trial court's ruling on evidentiary issues before deciding which forum, judge or jury, offered the best tactical advantage.

In the Coleman trial the prosecutor waited until the very day of trial—after the defendant's suppression motion had been denied and well after his waiver of a jury trial had been approved by the court—before demanding a jury trial.[9] In response to court inquiry, the prosecution candidly admitted that trial by jury was in no respect necessary to the presentation of its case. Nonetheless, the Commonwealth persisted in its demand:

> "THE COURT: Is this something that would prevent the Commonwealth from presenting a proper case?
>
> MR. McGILL [prosecuting attorney]: It does not prevent the Commonwealth from presenting a proper case, a case to the best of our ability, Your Honor . . . .
>
> THE COURT: Let me understand this. By that you mean you would be able to produce exactly the same evidence before this Court or any Court without a jury as you would before a Court with a jury?
>
> MR. McGILL: That's correct, Sir." [10]

9. The joint opinion of Justices Larsen and Kauffman suggests that appellee Coleman waived jury trial on June 16, 1980, rather than on April 14, 1980, as contended by appellee Coleman. However, the April date is undisputed by the Commonwealth in its briefs on appeal. Further, it is immaterial whether the waiver was approved by the trial court on June 16, three weeks before trial, or on April 14, three months before trial. The critical fact remains that, having concurred in the defendant's motion to waive jury trial, the prosecution on the day of trial refused to proceed before a judge as scheduled and insisted upon a jury trial, simply because it had obtained a favorable ruling on the suppression motion and therefore believed it would have a tactical advantage in proceeding before a jury.

10. Record at Appendix A, 18–19.

One week later, the Commonwealth acknowledged, as it does on appeal, that its objection was based on the belief that the prosecution would have a tactical advantage in a jury forum:

> "MR. MURRAY [prosecuting attorney]: [T]he only reason we requested a jury trial was because of certain factual issues that had been raised, Judge, and certain statements that Judge Della Porta made with regard to certain evidence during the motion to suppress." [11]

Thus, without in any way advancing the fair and equal administration of justice, the Commonwealth not only frustrated the legitimate expectation of appellee Coleman and his attorney to proceed to trial on the assigned day but also disrupted the orderly scheduling of other cases before the court.

The practice of "shopping" for a particular judge or tribunal by any litigant has been strongly condemned by this Court. See *Commonwealth v. Scoleri*, 415 Pa. 218, 202 A.2d 521 (1964). See also *Commonwealth v. Lee*, 262 Pa.Super. 280, 396 A.2d 755 (1978); *Commonwealth v. Garrison*, 242 Pa.Super. 509, 364 A.2d 388 (1976). This practice is most repugnant when engaged in by the prosecutor, "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Gannett Co. v. DePasquale*, 443 U.S. 368, 384 n.12, 99 S.Ct. 2898, 2908 n.12, 61 L.Ed.2d 608 (1979), quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

### B.

A prosecutorial veto power, immune from judicial review and serving no legitimate interest, derogates both the fairness and the appearance of fairness which are essential to the administration of criminal justice. As the Supreme Court of the United States has stated, "our system of law

11. Record at Appendix B, 4.

has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case .... [T]o perform its high function in the best way 'justice must satisfy the appearance of justice.' *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 [1954]." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). See also *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942) (Frankfurter, J.) ("public conscience must be satisfied that fairness dominates the administration of justice").

In upholding the right of an accused to waive trial by jury, the Supreme Court of the United States has stated:

"[T]he procedural safeguards of the Bill of Rights are not to be treated as mechanical rigidities. What were contrived as protections for the accused should not be turned into fetters.

.     .     .     .     .

To deny an accused a choice of procedure ... is to impair the worth of great Constitutional safeguards by treating them as empty verbalisms.

Underlying such dogmatism is distrust of the ability of courts to accommodate judgment to the varying circumstances of individual cases. But this is to express want of faith in the very tribunals which are charged with enforcement of the Constitution. 'Universal distrust', Mr. Justice Holmes admonished us, 'creates universal incompetence.' *Graham v. United States,* 231 U.S. 474, 480, 34 S.Ct. 148, 151, 58 L.Ed. 319. When the administration of the criminal law in the federal courts is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards ... and to base such denial on an arbitrary rule that a man cannot choose to conduct his defense before a judge rather than a jury ... is to imprison a man in his privileges and call it the Constitution."

*Adams v. United States ex rel. McCann,* supra, 317 U.S. at 279–80, 63 S.Ct. at 242.

It is particularly offensive to the fair and proper administration of criminal justice that the prosecution should compel a jury trial, which was conceived and preserved by the federal and state Constitutions as a protection for the accused against arbitrary and oppressive law enforcement, for purely arbitrary or tactical reasons. When the accused believes, and the trial court finds, that the equally available and more expeditious alternative of trial by judge will secure a just result, to permit the prosecution to veto the court's decision and send the accused to a jury forum is indeed to imprison the accused in his constitutional right to a jury trial. Such compulsion turns the protective shield of a jury trial into a sword of the very oppression which it was intended to prevent. As the Seventh Circuit has recently observed, "[c]ertainly, no proper state purpose is served by allowing a purely tactical veto power." *McMorris v. Israel,* 643 F.2d 458 (7th Cir. 1981) (prosecutor's power to refuse to stipulate to admission of polygraph examination without articulating reasons unconstitutional). See *Gov't of Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir. 1980) (prosecutor's refusal to consent to use immunity offered by juvenile authorities to defense witness, over whom prosecutor had no jurisdiction, without articulating reasons and for apparent tactical strategy, violation of defendant's right to fair trial); *State ex rel. Schillberg v. Cascade District Court,* 94 Wash.2d 772, 621 P.2d 115 (1980) (statute requiring prosecutor's consent, not subject to judicial review, before court may refer defendant for diagnostic evaluation and possible deferred prosecution unconstitutional infringement of judicial power).

## C.

The Commonwealth does not and cannot contend that trial by jury is essential to the achievement of justice either in the trials of appellees Wharton and Coleman or in any other criminal prosecution. It is beyond cavil that a fair trial may

be obtained without a jury. See *Gannett Co. v. DePasquale,*
443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); *McKeiver
& Terry v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29
L.Ed.2d 647 (1971), aff'g *Terry Appeal,* 438 Pa. 339, 265 A.2d
350 (1970); *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444,
20 L.Ed.2d 491 (1968); *Adams v. United States ex rel.
McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942);
*Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed.
854 (1930). See also *United States v. Maybury,* 274 F.2d 899,
902 (2d Cir. 1960) (Friendly, J.) (jury trials arose as alterna-
tive to compurgation and ordeal, not to trial by judge).
Indeed, there may be cases, such as those involving wide-
spread publicity adverse to the accused, in which trial before
a judge will be perceived as potentially more fair than a jury
trial. For example, appellee Wharton, who is charged with
escape from prison and several offenses committed while on
escape, may well have chosen to waive jury trial because he
had greater confidence in a judge than in a jury to adjudi-
cate the case uninfluenced by his criminal record and impris-
onment. See *United States v. Schipani,* 44 F.R.D. 461 (E.D.
N.Y.1968) (trial by judge granted over prosecutor's objection
where testimony would reveal defendant's criminal record
and links with organized crime). See also *Adams v. United
States ex rel. McCann,* 317 U.S. 269, 278, 63 S.Ct. 236, 241, 87
L.Ed. 268 (1942) ("less rigorous enforcement of the rules of
evidence ... [and] greater informality in trial procedure"
available in judge trial); Kamisar, LaFave & Israel, Modern
Criminal Procedure at 1330 (5th ed. 1980); Commentary,
ABA Standards Relating to Trial by Jury, Standard 15–1.2
(Approved Draft, 1978). See generally Oppenheim, Waiver
of Trial by Jury in Criminal Cases, 25 Mich.L.Rev. 695,
714–15 (1927) (suggesting reasons which might cause ac-
cused to prefer judge trial).

Although trial by jury was historically considered "most
likely to produce a fair result," *Singer v. United States,* 380
U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965), the trial
jury is no longer considered essential to the fair adjudication
of guilt or innocence. Thus, in *Terry Appeal,* supra, this

Court held that the due process procedural safeguard of trial by jury is not constitutionally mandated in the juvenile court system where the safeguards of "right to adequate and timely notice, the right to counsel, the right of confrontation and cross-examination, and the privilege against self-incrimination [are afforded and] serve to eliminate much of the danger of arbitrariness." 438 Pa. at 347, 265 A.2d at 354. In affirming this Court's decision, the Supreme Court of the United States stated:

> "[O]ne cannot say that in our legal system the jury is a necessary component of accurate factfinding. There is much to be said for it, to be sure, but we have been content to pursue other ways for determining facts. . . . In *Duncan* [v. *Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)] the Court stated, 'We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury.' 391 U.S. at 158, 88 S.Ct. at 1452." 403 U.S. at 543, 91 S.Ct. at 1985.

The large number of non-jury trials—and correspondingly small number of jury trials—in criminal cases throughout this Commonwealth itself belies any argument that trial by jury is inherently necessary to a fair trial. Indeed, in Philadelphia, where appellees Wharton and Coleman are on trial and where eighty-nine percent of all criminal trials over the past three years have been conducted without a jury, the prosecution has never challenged a trial by judge as unfair.

V

By vesting exclusively in the Supreme Court the responsibility to administer this Commonwealth's unified judicial system, the Constitution recognizes that trial procedure must be closely supervised, and modified when necessary, to achieve the dual goals of safeguarding the individual rights of the citizen accused and maintaining public confidence in the administration of justice. Rule 1101 was adopted and

subsequently amended to achieve these goals by assuring the essential constitutional authority of the trial court to regulate the fairness of its proceedings. Because 42 Pa.C.S. § 5104(c) usurps this Court's constitutional procedural rulemaking authority and impermissibly restricts the exercise by trial court judges of their constitutional authority to conduct a fair trial, the statute must be declared unconstitutional.

As the records in these two cases indisputably illustrate, there is no basis in law or fact for disturbing the orders of the trial courts. Accordingly, the orders must be affirmed.

FLAHERTY, J., joins in this Opinion in Support of Affirmance.

O'BRIEN, C. J., joins in Parts I, II and V of this Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF REVERSAL

NIX, Justice.

These are two interlocutory appeals from separate orders of the Court of Common Pleas. In each case, the defendant below requested waiver of trial by jury pursuant to Pennsylvania Rule of Criminal Procedure 1101[1] and the Commonwealth in turn demanded trial by jury under 42 Pa.C.S.A. § 5104(c).[2] The common issue in these otherwise unrelated cases is the conflict between the court rule and the statutory provision. For the reasons that follow, I am in agreement that the court rule in this instance must defer to the statutory enactment.

1. Pennsylvania Rule of Criminal Procedure 1101 provides:
   Waiver of Jury Trial.
   In all cases the defendant may waive a jury trial with the consent of his attorney, if any, and approval by a judge of the court in which the case is pending, and elect to be tried by a judge without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, such colloquy shall appear on the record. . . .

2. Section 5104(c) provides:
   In criminal cases the Commonwealth shall have the same right to trial by jury as does the accused.

Under Article 5, § 10, of the Pennsylvania Constitution this Court has been vested with the power: "to prescribe general rules governing practice, procedure and the conduct of all courts, . . . ." That section of the Constitution also provides "that [a]ll laws shall be suspended to the extent that they are inconsistent with rules prescribed. . ." by this Court in fulfilling its rulemaking responsibility. *Pa.Const.*, Art. 5, § 10.

The only limitation to that rulemaking power is that such rules must be "consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court. . . ." *Pa.Const.*, Art. 5, § 10.

At the time of the adoption of Rule 1101 (January 24, 1968), there was neither a constitutional right nor a statutory right vesting the Commonwealth with the power to demand trial by jury in criminal cases.[3] In the promulgation and in the amendment of this rule, the Court was discharging its responsibility of setting forth the *manner* in which a party seeking to waive trial by jury should proceed. In deleting the original requirement of the attorney for the Commonwealth's approval in 1973, this Court was not seeking to curtail a right of the Commonwealth but rather was designing a procedure, recognizing that the Commonwealth possessed (at that time) no right in the decision as to whether or not a jury trial should be permitted. By the enactment of § 5104(c) (promulgated in 1976) the Legislature created a substantive right in the Commonwealth to veto the decision to waive trial by jury in criminal matters. Thus, at the time of the trials of these two cases, the Commonwealth did have a legislatively conferred substantive right to object to the defendant's decision to be tried without a jury.

**3.** The rule as originally drafted required the approval of the attorney for the Commonwealth before a waiver of jury trial could be accepted by the court. That requirement was deleted in the 1973 modification of the rule.

The fact that a rule, promulgated prior to the creation of this right did not provide for the exercise of the right, cannot be construed as authority for the abrogation of that right. As stated, the Court rule was never intended to take away a right of the Commonwealth. It also may not be allowed to be used as a vehicle to ignore a subsequently conferred right.

I would, therefore, agree that the prosecution's decision in these cases, that a jury trial should not be waived, must be respected and that the trial of these cases must proceed before a jury.

## OPINION IN SUPPORT OF REVERSAL

LARSEN and KAUFFMAN, Justices.

Before us are two interlocutory appeals from separate orders of the Court of Common Pleas of Philadelphia in two unrelated criminal prosecutions. In each case, the defendant requested waiver of trial by jury pursuant to Pennsylvania Rule of Criminal Procedure 1101 ("Rule 1101"),[1] and the Commonwealth, in turn, sought to defeat the waiver by invoking its statutory right to jury trial provided under 42 Pa.C.S.A. 5104(c) ("Section 5104(c)").[2] Each of the trial court orders held that Section 5104(c) unconstitutionally conflicted with the defendant's Rule 1101 waiver rights, and thus denied the Commonwealth the right to compel jury trial.

Appellee Wharton filed a waiver motion on June 16, 1980, and the Commonwealth demanded its statutory right to jury

1. Rule 1101 provides:
    "Waiver of Jury Trial.
    In all cases, the defendant may waive a jury trial with the consent of his attorney, if any, and approval by a judge of the court in which the case is pending, and elect to be tried by a judge without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record...."

2. Section 5104(c) provides:
    "In criminal cases the Commonwealth shall have the same right to trial by jury as does the accused."

trial on the same day. In rejecting the Commonwealth's demand, the trial court held that Section 5104(c) intrudes upon this Court's exclusive authority to prescribe rules governing criminal procedure in Pennsylvania.[3]

Appellee Coleman orally indicated his desire to waive jury trial on June 16, 1980, but no formal order of court approval was entered at that time. Approximately two weeks later, the court scheduled trial for Monday, July 7. On that day the Commonwealth demanded a jury trial pursuant to Section 5104(c). Concluding that a criminal defendant has a constitutional right to waive trial by jury, the trial court held that Section 5104(c) is unconstitutional and rejected the Commonwealth's demand.

Because both of these matters are of immediate and significant public importance, we consolidated these appeals and assumed plenary jurisdiction pursuant to 42 Pa.C.S.A. § 726.[4]

We preliminarily note that "a legislative enactment enjoys a presumption in favor of its constitutionality and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. All doubts are to be resolved in favor of a finding of constitutionality." *Parker*

3. Pa.Const. Art. V § 10 provides:
   (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, . . . if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions."

4. 42 Pa.C.S.A. § 726 provides:
   *Extraordinary jurisdiction*
   Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

v. *Children's Hospital of Philadelphia,* 483 Pa. 106, 116, 394 A.2d 932, 937 (1978), citing *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975); *Glancey v. Casey,* 447 Pa. 77, 288 A.2d 812 (1972); *Milk Control Commission of Battista,* 413 Pa. 652, 198 A.2d 840 (1964); *Daley v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963). Thus, when possible, we are obligated to interpret an act of the Legislature in a manner constitutionally consistent with the rulemaking powers of this Court. *See, In re Investigating Grand Jury of Philadelphia County,* 490 Pa. 31, 415 A.2d 17, (1980); cf. *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780 (1977).

With that principle in mind, we turn to a brief review of the genesis of Rule 1101 and Section 5104(c). The forerunner of Rule 1101 was a pre-1968 statute, 19 P.S. § 786 (Act of June 11, 1935, P.L. 319, No. 141), which provided:

§ 786. Jury trial may be waived in certain cases; form of waiver

In all criminal cases, except murder and treason, the defendant shall have the privilege, with the consent of his attorney of record, the judge *and the district attorney,* to waive trial by jury. Such a waiver must be in writing, signed by the defendant, and shall operate as an election by the defendant to be tried by a judge without a jury. (Emphasis supplied).

Rule 1101, which was adopted following the constitutional transfer of the criminal rule making power to this Court in 1968, originally was essentially identical to 19 P.S. § 786. In 1973, however, by amendment of the rule, the proscription against waiver of jury trials in capital cases was ended and the requirement of the prosecutor's consent was deleted. Thereafter, in order to compensate for the elimination of the Commonwealth's right to object to a defendant's waiver of jury trial, the Legislature, in July, 1976, adopted Section 5104(c) granting the Commonwealth its own right to trial by jury.

Because it is "most likely to produce a fair result," trial by jury has been established by the Constitution as the "normal *and* . . . *preferable* mode of disposing of issues of fact in

criminal cases...." *Singer v. United States,* 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965) (emphasis supplied). Moreover, the importance of the jury as finder of fact has compelled the United States Supreme Court to hold consistently that the government has a significant interest in the choice of tribunal in federal cases:

> Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant.

*Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1929).[5] And in *Singer, supra,* Chief Justice Warren, speaking for a unanimous Court, held constitutional Federal Rule of Criminal Procedure 23(a) (requiring court approval and government consent for jury trial waiver):

> A defendant's *only constitutional right* concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him. The Constitution recognizes an adversary system as the proper method of determining guilt, and *the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the constitution regards as most likely to produce a fair result.* This recognition of the Government's interest as a litigant

5. Twenty-six states in addition to Pennsylvania, the federal courts, and the District of Columbia, provide the prosecution a right to demand jury trial when a defendant seeks to waive the right in a criminal case. *See* also, American Bar Association Standards Relating to the Administration of Criminal Justice, *Trial by Jury,* Standard 15–1.2 (approved August 9, 1978) at pp. 6–9.

has an analogy in Rule 24(b) of the federal rules, which permits the Government to challenge jurors peremptorily. 380 U.S. at p. 36, 85 S.Ct. at 790. (Emphasis supplied).[6]

Appellees, however, have raised the question of whether jury trial is, in fact, a "substantive right" or simply a procedural mechanism for effectuating substantive rights. If jury trial were merely a procedural mechanism and not a substantive right, a legislatively promulgated jury trial right for the Commonwealth might intrude unconstitutionally upon this Court's exclusive procedural rule-making authority as manifested in Rule 1101. On the other hand, if the right to jury trial is a matter of substantive law, any rule abridging that right would be constitutionally infirm.[7]

Although the *manner* in which a party may waive jury trial is clearly a procedural matter properly preserved within this Court's authority, the *right* to jury trial is unmistakably substantive.[8] The U. S. Supreme Court, in reviewing the

6. *Patton* and *Singer* were cited with approval in *Gannett Co. v. DePasquale*, 443 U.S. 368, 383, 99 S.Ct. 2898, 2907, 61 L.Ed.2d 608 (1979):

Thus, because of the great public interest in jury trials as the *preferred mode of fact-finding in criminal cases*, a defendant cannot waive a jury trial without the consent of the prosecutor and judge. (Citing *Patton* and *Singer*). (Emphasis supplied).

7. When the 1973 Amendment to Rule 1101 was originally proposed, the Criminal Procedural Rules Committee was, in fact, concerned that the pre-rule waiver statute had itself effectively granted a substantive jury trial right to the Commonwealth, and that deletion of the prosecutorial consent requirement would therefore be an impermissible abrogation of that right. We were not persuaded, however, that the consent requirement was the equivalent of a substantive right. In deleting the requirement we necessarily decided then, as we do today, that the mechanics of waiver are procedural aspects of the jury trial right, properly and exclusively within our rule-making authority, and entirely separate and distinct from substantive rights which are conferred or denied exclusively by the Legislature.

8. See, for example:

*Hardamon v. Municipal Court*, 178 Colo. 271, 497 P.2d 1000 (1972):

The trial court ... found that the matter of jury trials was one of practice and procedure and that under the Colorado Constitution, Article III, relating to the division of powers, only the judiciary and not the general assembly could control the right to jury trials; and

historical objective of the Seventh Amendment to the United States Constitution (right to jury trial in civil cases), has noted:

> [O]ur decisions have defined the jury right preserved in cases covered by the Amendment, as "the substance of the common-law right of trial by jury, as distinguished from mere matters of form or procedure. . . ." *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657, 55 S.Ct. 890, 891, 79 L.Ed. 1636 (1935).

*Colgrove v. Bottin*, 413 U.S. 149, 156, 93 S.Ct. 2448, 2452, 37 L.Ed.2d 522 (1973).[9]

The procedural nature of the waiver mechanism thus does not gainsay the substantive aspects of the right. Once the nature of the right is understood, it becomes abundantly clear that the Legislature has unequivocal authority to confer upon the Commonwealth a jury trial right as a matter of substantive law. While we in no way suggest that this

for the general assembly to legislate in the field of court practice and procedure would be a violation of Article III. We reject this reasoning, having held the *right to a jury to be substantive and not procedural.* (Emphasis supplied).

*Michigan v. Bell*, 53 Mich.App. 161, 218 N.W.2d 873 (1974):

The constitutional and *substantive right* of a defendant to a trial by jury cannot be diminished by a local court rule waiver provision that enlarges the statutory method of waiver. (Emphasis supplied).

*Lapp v. City of Worland*, 612 P.2d 868 (Wyo. 1980):

We find, for the purposes of this case, that the legislature intended to give an individual the right to jury trial for violation of a municipal ordinance. We consider it a *substantive right* . . . reserved to the legislature. (Emphasis supplied).

*Ohio ex rel. Columbus v. Boyland*, 58 Ohio St.2d 490, 391 N.E.2d 324 (1979):

Crim.R. 23(B) in no way attempts to alter a defendant's *substantive constitutional right* to a trial by jury. It merely prescribes the method by which the *substantive right* is to be exercised. It is properly characterized as procedural in nature. The rule, therefore, was properly promulgated pursuant to this Court's rule-making authority pursuant to Section 5(B) of Article IV of the Ohio Constitution. (Emphasis supplied)

**9.** *Colgrove* dealt with the question of the size of civil juries. The Supreme Court concluded that "it cannot be said that 12 members is a substantive aspect of the right of trial by jury," 413 U.S. at 157, 93 S.Ct. at 2452, clearly implying that the underlying right is, at least in some aspects, substantive in nature.

Court's rule-making power can or should be curtailed with respect to matters properly within our constitutional authority, we may not interfere by rule with the substantive public policy judgments of the Legislature. *Parker v. Children's Hospital, supra*, 483 Pa. at 116, 394 A.2d at 937. At the same time, as we have previously noted, when possible, we are obliged to read rules of court and statutes in a manner not unconstitutionally in conflict with one another. Since Rule 1101 may be read to deal exclusively with the procedural requirements for waiver of the *defendant's* jury trial right, we conclude that it is not inconsistent with Section 5104(c), which confers upon the Commonwealth its own substantive right to jury trial.[10] The trial judge's ruling below in *Wharton* was, therefore, in error.

The basis of the trial judge's ruling in *Coleman*, that a defendant has a constitutional right to a non-jury trial, has been flatly and repeatedly rejected by this Court and the United States Supreme Court. *See*, e. g., *Commonwealth v. Correa*, 485 Pa. 376, 402 A.2d 1011 (1979); *Gannett Co. Inc. v. DePasquale, supra* n.7; *Singer v. United States, supra*.[11]

Accordingly, we would reverse the orders of the trial courts and remand the cases for trial by jury.

**10.** Our Criminal Procedural Rules Committee has recently proposed an amendment to Rule 1101 for the purpose of incorporating the Commonwealth's substantive right into the waiver procedure.

**11.** Coleman claims to have requested waiver on April 14, 1980, and accuses the Commonwealth of bad faith in waiting until July 7 to assert its statutory jury trial right. The notes of testimony from April 14, 1980, however, reflect no such request. In fact the notes of testimony from July 14, 1980 reveal that Coleman's counsel repeatedly asserted that the waiver request was not made until June 16, 1980.