610 A.2d 36

COMMONWEALTH of Pennsylvania, Appellee,

v.

ONE (1) 1984 Z–28 CAMARO COUPE and Cheryl
Stuck and Kenneth A. Stuck, Jr., Appellants.

Supreme Court of Pennsylvania.

Argued Dec. 5, 1991.

Decided May 20, 1992.

Peter T. Campana, Williamsport, David M. McGlaughlin, Philadelphia, for amicus, Pa. Assoc. of Crim. Defense Lawyers.

Robert B. Sacavage, Dist. Atty., Guy L. Ciarrocchi, Deputy Atty. Gen., Mary Benefield Seiverling, Harrisburg, for amicus, Atty. Gen.

Ronald Eisenberg, Deputy Dist. Atty., George S. Leone, Philadelphia, for amicus, Pa. D.A. Assoc.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS, and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

■ The issue raised by this case is whether the owner of property subject to forfeiture under the Controlled Substances Forfeitures Act[1] is entitled to a jury trial pursuant

---

1. Section 6802 of the Controlled Substances Forfeitures Act, concerning procedure with respect to property subject to forfeiture, 42 Pa.C.S. § 6802, provides, in pertinent part:

    **(a) General procedure.** The proceedings for the forfeiture or condemnation of property, the sale of which is provided for in this chapter, shall be in rem, in which the Commonwealth shall be the plaintiff and the property the defendant. A petition shall be filed in the court of common pleas of the judicial district where the property is located, verified by oath or affirmation of an officer or citizen, containing the following:

    (1) A description of the property seized.

    (2) A statement of the time and place where seized.

    (3) The owner, if known.

    (4) The person or persons in possession, if known.

    (5) An allegation that the property is subject to forfeiture pursuant to section 6801(a) (relating to loss of property rights to Commonwealth) and an averment of material facts upon which the forfeiture action is based.

    (6) A prayer for an order of forfeiture that the property be adjudged forfeited to the Commonwealth and condemned and be

to Article 1, § 6 of the Pennsylvania Constitution.[2] For the reasons that follow, we hold that jury trials are required when demanded by claimants in forfeiture actions brought pursuant to the Controlled Substances Forfeitures Act.

The property at issue in this case is a 1984 Z–28 Camaro automobile, which was allegedly purchased using proceeds from the illegal sale of drugs and which was allegedly used to store illegal drugs. On January 12, 1989, the Commonwealth filed a petition for forfeiture and condemnation in the Court of Common Pleas of Northumberland County seeking forfeiture of the 1984 Camaro pursuant to the Controlled Substances Forfeiture Act. The Stucks, appellants herein, then filed a claim to the vehicle and demanded a jury trial. The trial court granted the request for a jury trial, but subsequently granted the Commonwealth's motion

ordered sold according to law, unless cause be shown to the contrary.

    \*    \*    \*    \*    \*    \*

(h) **Hearing regarding property; rules of evidence.** The court may receive and consider, at a hearing held pursuant to subsection (f) or (g), evidence and information that would be inadmissible under the rules of evidence.

(i) **Hearing time set.** Upon the filing of a claim for the property setting forth a right of possession, the case shall be deemed at issue and a time shall be fixed for the hearing.

(j) **Owner's burden of proof.** At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be upon the claimant to show:

  (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

  (2) That the claimant lawfully acquired the property.

  (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

**2.** Article 1, § 6 of the Pennsylvania Constitution provides:
**Trial by Jury**
  Section 6. Trial by jury shall be as heretofore and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case.

for certification of the case as appropriate for interlocutory appeal on the question of whether a jury trial was required. Commonwealth Court granted the Commonwealth's petition for permission to appeal, and after argument reversed the trial court's order requiring a jury trial. The Stucks petitioned for allowance of appeal and this Court granted allocatur.

Commonwealth Court held that the right to a jury trial in a controlled substance forfeiture proceeding is not required by the statute, is not suggested in legislative history or by legislative treatment of other forfeiture acts, and is not expressly guaranteed by the constitution or based in common law. It concluded, therefore, that there is no right to a jury trial in this case.

Commonwealth Court observed that this court has interpreted Pennsylvania's constitutional requirement that "trial by jury shall be as heretofore, and the right thereof remain inviolate," Art. 1, § 6, Pa.Const., to mean that jury trial rights existing when the constitution was adopted were preserved, *Byers v. Commonwealth*, 42 Pa. 89 (1862), and that jury trials are required in every case where one would have been required in 1790, when the Pennsylvania Constitution was adopted. *William Goldman Theatres v. Dana*, 405 Pa. 83, 173 A.2d 59 (1961).[3]

The Commonwealth argues that Article 1, § 6 of the Pennsylvania Constitution requires a jury trial only where the common law provided for a jury trial in 1790. This case, according to the Commonwealth, involves proceedings created by statute subsequent to 1790, not by the common law, and in such proceedings, jury trials are required only if the legislature has expressly provided for them. The legislature has not provided for a jury trial in this case. Since there is, according to the Commonwealth, a statutory basis but no common law basis for the action, there is no require-

---

**3.** In *Wm. Goldman Theatres* this court stated: "[T]he individual is entitled to a public trial by an impartial jury of the vicinage in every situation in which he would have been entitled to such a trial at the time of the adoption of our State Constitution of 1790 and ever since under our succeeding constitutions." 405 Pa. at 93, 173 A.2d 59.

ment of a jury trial. This would be true even if forfeiture actions were tried before juries in 1790, for statutory actions are not part of the common law, and only common law actions involving jury trials are implicated by Article 1, § 6 of the Pennsylvania Constitution. See *Murphy v. Cartex Corp.:*

> [I]t has long been recognized that the Pennsylvania Constitution [Article 1, § 6] 'only preserves the right to trial by jury in those cases where it existed at the time the Constitution was adopted.' *W.J. Dillner Co. v. Pa. Public Utilities Comm.,* 191 Pa.Superior Ct. 136, 149, 155 A.2d 429, 435 (1959). Jury trials are not available in proceedings created by statute unless the proceeding has a common law basis or unless the statute expressly or impliedly so provides. *See, appeal of Watson,* 377 Pa. 495, 105 A.2d 576 (1954).

377 Pa.Super. 181, 192, 546 A.2d 1217, 1222 (1988).

Stucks argue that in proceedings created by statute, a jury trial is available when the proceeding has a common law basis, *Appeal of Watson,* 377 Pa. 495, 105 A.2d 576 (1954); that in rem forfeiture proceedings existed at common law, and that the owner of property was entitled to a jury trial in these proceedings, *United States v. One 1976 Mercedes Benz 280 S,* 618 F.2d 453 (7th Cir.1980); and that the exigencies of the current war on drugs should not be utilized to deny constitutional rights.

We agree with the Commonwealth that there is no statutory requirement for a jury trial in this case. The question, then, becomes whether jury trials were required in forfeiture proceedings in 1790, and if so, whether there is a common law basis for the proceeding.

As to the first question, whether jury trials were required in forfeiture actions in 1790, our research indicates that in 1782, the case of *Wilcox v. Henry,* 1 Dall. 68, 1 L.Ed. 41 (Pa., 1782), a forfeiture case, was before the Supreme Court of Pennsylvania. The case involved the question of whether salt which had been brought to Philadelphia during the British occupation of that city, but then sold to an American

citizen, should be forfeited to the United States after the American army recaptured Philadelphia. The government's theory was that the salt was the property of an enemy (the original owner) and not an American because the contract of sale provided that the salt was to be paid for only after the American army arrived in Philadelphia, and then only on the condition that the salt was not destroyed. This meant, according to the government, that the salt was still the property of a British national when American troops arrived and that it was, therefore, forfeit. The Supreme Court of Pennsylvania tried the case to a jury, which held for the owner of the salt. We conclude from this that a property owner was entitled to a jury trial in forfeiture actions in 1790, at least as to goods seized on land [4] where there is an issue as to whether the seized goods are contraband.[5]

■ The next question is whether the forfeiture action in this case has a common law basis. The term "common law basis" does not, in the context of this case, mean that the action originated at common law, for even prior to 1790, forfeiture actions were of statutory origin. *See,* e.g., The Judiciary Act of 1789, 1 Stat. 73. Rather, "common law basis" refers to the nature of the proceeding in common law courts such as the Court of Exchequer, but not courts of

4. Mr. Justice Stone, in *Hendry v. Moore,* 318 U.S. 133, 137, 63 S.Ct. 499, 501–02, 87 L.Ed. 663, 666 (1943), wrote:
   Forfeiture to the Crown of the offending object, because it had been used in violation of law, by a procedure in rem was a practice familiar not only to the English admiralty courts but to the Court of Exchequer. The exchequer gave such a remedy for the forfeiture of articles seized on land for the violation of law. And, concurrently with the admiralty, it entertained true proceedings in rem for the forfeiture of vessels for violation on navigable waters.

5. We note that there is a difference in Pennsylvania law as to the treatment of property which is, per se, illegal to possess, and property which is not, in itself, illegal to possess. *See,* e.g., Pennsylvania statutes allowing seized liquor which does not bear the appropriate tax stamp to be forfeited in an *in rem* proceeding without a jury. *See* Act of December 12, 1723, 3 Pa. Statutes at Large 408, 412–13; Act of May 26, 1744, 4 Pa. Statutes at Large 395, 402–03; Act of September 21, 1756, 5 Pa. Statutes at Large 243, 252, 258; Act of March 12, 1772, 8 Pa. Statutes at Large 204, 218–19.

Admiralty or Chancery.[6] Long before the American Revo-lution, English Admiralty courts, for example, heard forfei-ture cases without a jury, but where common law courts (Courts of Exchequer) had jurisdiction to hear forfeiture cases, as in cases involving forfeitures on land, where there is an issue as to whether the seized goods are contraband, the cases were, according to common law tradition heard by the court sitting with a jury. *See C.J. Hendry Co. v. Moore*, 318 U.S. 133, 63 S.Ct. 499, 87 L.Ed. 663 (1943).[7]

Mr. Justice Stone in *C.J. Hendry Co. v. Moore* described forfeiture practice in colonial America:

6. The Supreme Court of California, addressing the same question as is raised in this case, except under the California Constitution, writes as follows about the common law:

Long before the adoption of the California Constitution there were numerous statutes in England providing for the seizure and forfeiture of property used in violation of law.

At common law the trial of actions for forfeiture to the Crown of property used in violation of law was in the Court of Exchequer. "The term 'Common Law' often refers to those principles of English Law which were evolved in the Common Law Courts, as opposed to the principles which were applied in the Courts of Chancery and Admiralty and the Ecclesiastical Courts. The Courts of Common Law before the passing of the Judicature Acts, 1873–5, were the three Royal Courts of Kings's Bench, Common Pleas or Common Bench, and Exchequer, which had emerged from the King's Council (Curia Regis) as separate Courts by the end of the thirteenth centu-ry." Phillips, The Principles of English Law and the Constitution, 70. The Court of Exchequer was not a criminal court; and all suits for penalties, though of the King, were considered as civil. Burns, Justice of the Peace (23d ed.) vol. I, p. 806.
*People v. One 1941 Chevrolet Coupe,* 37 Cal.2d 283, 231 P.2d 832, 835–36 (1951).

7. As the United States Court of Appeals for the Seventh Circuit points out, the distinction between the practice in courts of Admiralty, which heard forfeiture actions without a jury, and the common law courts of Exchequer, in which forfeiture actions were heard with a jury, was well-known. Equally well-known was Parliament's attempt to extend Admiralty's jurisdiction in the colonies so as to reduce the number of jury trials in forfeitures. The reason for this statutory extension of jurisdiction of the Admiralty courts was that American juries were reluctant to find in favor of the crown in forfeiture cases. The American response is in part reflected in Declaration of Indepen-dence, where the King and Parliament are denounced "For depriving us, in many cases, of the Benefits of Trial by Jury." *United States v. One 1976 Mercedes Benz 280 S,* 618 F.2d 453, 464, 464 n. 49 (7th Cir.1980).

The common law as it was received in the United States at the time of the adoption of the Constitution did not afford a remedy in rem in suits between private persons.... *But to the generalization that a judgment in rem was not a common law remedy there is an important exception.* Forfeiture to the Crown of the offending object, because it had been used in violation of law, by a procedure in rem was a practice familiar not only to the English admiralty courts but to the Court of Exchequer. The Exchequer gave such a remedy for the forfeiture of articles seized on land for the violation of law.... Such suits in the Exchequer were begun on information and were against the vessel or article to be condemned.

\* \* \* \* \* \*

Separate courts exercising the jurisdiction of the Court of Exchequer were never established in the American Colonies. *Instead, that jurisdiction was absorbed by the common law courts which entertained suits for the forfeiture of property under English or local statutes authorizing its condemnation. Long before the adoption of the Constitution the common law courts in the Colonies—and later in the states during the period of Confederation—were exercising jurisdiction in rem in the enforcement of forfeiture statutes.* Like the Exchequer, in cases of seizure on navigable waters they exercised a jurisdiction concurrently with the courts of admiralty. But the vice-admiralty courts in the Colonies did not begin to function with any real continuity until about 1700 or shortly afterward.... *By that time, the jurisdiction of common law courts to condemn ships and cargoes for violation of the Navigation Acts had been firmly established, apparently without question, and was regularly exercised throughout the colonies. In general the suits were brought against the vessel or article to be condemned, were tried by jury,* closely followed the procedure in Exchequer, and if successful

resulted in judgments of forfeiture or condemnation with a provision for sale.

\* \* \* \* \* \* .

The Court has never held or said that the admiralty jurisdiction in a forfeiture case is exclusive, and it has repeatedly declared that, in cases of forfeiture of articles seized on land for violation of federal statutes, *the district courts proceed as courts of common law according to the course of the Exchequer on informations in rem with trial by jury.* [Citations omitted.] ... Justice Story defined such an action as a libel or information in rem on the Exchequer side of the court. And see Chief Justice Marshall's reference, in *The Hoppet v. United States,* 7 Cranch (U.S.) 389, 393, 3 L.Ed. 380, 382, to "proceedings in courts of common law, either against the person or the thing, for penalties or forfeitures." *In all this we perceive a common understanding of judges, lawyers and text writers, both before and after the adoption of the Constitution, of the common law nature of the procedure and judgment in rem in forfeiture cases and of its use in such proceedings in the exchequer and in the American common law courts.*

318 U.S. at 137–40, 153, 63 S.Ct. at 501–03, 510, 87 L.Ed. at 666–68, 675 (emphasis added). Thus, in England, forfeiture actions in the Courts of Exchequer were tried before a jury,[8] and in the United States, forfeiture actions were heard before juries in cases where Courts of Exchequer would have had jurisdiction. We conclude that the forfeiture action in this case has a common law basis, for it is the type of case—seizure on land of goods which the owner claims are not contraband—which would have been within

8. In *People v. One 1941 Chevrolet,* the California Supreme Court stated:
There are reports of many cases in the Court of Exchequer in which articles used in violation of law were forfeited to the Crown pursuant to statute, in all of which the cause was tried by a jury. 37 Cal.2d 283, 231 P.2d 832, 839 (1951). The court goes on to cite thirty-eight cases, the oldest of which dates back to the year 1459.

the jurisdiction of the Court of Exchequer, and later, American common law courts.

Relying in part on *Hendry*, the United States Court of Appeals for the Seventh Circuit has arrived at a similar conclusion:

> both English and American practice prior to 1791 definitely recognized jury trial of in rem actions at common law as the established mode of determining the propriety of statutory forfeitures on land for breach of statutory prohibitions.

*United States v. One 1976 Mercedes Benz 280 S*, 618 F.2d 453, 466 (7th Cir.1980).[9] The court also noted "the time-honored tradition of American commitment to jury trial, extending back to the Continental Congress (and as was then believed, to the *legale judicium parium* in Magna Carta.)," and Blackstone's view that the English dedication to trial by jury was even more pronounced in the new world than in the old. *Id.* at 468.

For the foregoing reasons, we hold that the Stucks are entitled to a jury trial pursuant to Article 1, § 6 of the Pennsylvania Constitution. In rem forfeiture actions involving questions of whether the goods seized are contraband were heard in common law courts before juries in 1790, and this right to jury trial is preserved by the Pennsylvania Constitution.

Reversed and remanded for jury trial.

McDERMOTT, J., files a concurring opinion.

McDERMOTT, Justice, concurring.

The majority's historical analysis in this case is doubtful on two grounds. First, this Court, in a case of relatively

---

**9.** Even the dissenting judge in *United States v. One 1976 Mercedes Benz 280 S* agreed that the majority's conclusion " 'that both English and American Practice prior to 1791 definitely recognized jury trial of in rem actions at common law as the established mode of determining the propriety of statutory forfeitures on land for breach of statutory prohibitions' " "is undoubtedly correct." 618 F.2d at 470. The dissenter's quarrel was with the manner in which the conclusion was applied to the facts of that case.

recent vintage, held that a jury trial is *not* required in all forfeiture proceedings. *See Commonwealth v. Bowers,* 304 Pa. 253, 155 A. 605 (1931).

The Court in *Bowers* was addressing the issue of forfeiture used in illegal alcohol distribution. The case is analogous to the case at bar in that the statute there was also directed towards the seizure of non-contraband items based on their alleged relationship to the contraband itself. Under the then extant forfeiture statute no jury trial was prescribed. The Court in addressing the question ruled thusly:

> "A jury trial can only be demanded where there is a disputed question of fact. The court is *not required* to award a jury trial in cases where there is no dispute of fact and it would be obliged to decide the case against the claimant, as a matter of law, on his petition."

*Id.,* 304 Pa. at 259, 155 A. at 608 (emphasis added). Thus, this Court has already ruled that a forfeiture proceeding can go forward without a jury, and the majority's historical analysis is not sufficiently compelling to convince me that a jury trial is constitutionally required in all cases, especially since such a conclusion necessarily requires an overruling of longstanding precedent in this area.

The effect of the Court's decision in *Bowers* is that in those cases where there has been prior adjudication of facts, as would be the case where there has been a conviction, no forfeiture jury need be impaneled. Thus, if the majority means by its decision today that one *convicted* of using a thing or place to make, sell, transport, or store illegal drugs, is nonetheless entitled to a jury trial on whether that thing or place stands forfeit, I vigorously dissent. In such a case the verdict of the jury (or judge sitting as fact finder) in the criminal trial leaves no facts in dispute.

Second, the majority has taken a romantic leap from the case of *Wilcox v. Henry,* 1 Dall. 69, 1 L.Ed. 41 (1782), arguing that because a jury trial was held there, that a jury trial was *in fact required* to be so held. The majority cites

no historical evidence in support of this conclusion and I am unwilling to accept the majority's assumption that merely because a jury trial was once held it must follow that a jury trial was mandated in all forfeiture proceedings.

If the majority confined their ruling to those cases where third persons claimed a lack of knowledge that property owned by them was illegally used by one convicted while using the thing or place, I would agree. Likewise, I would agree when the prosecution seeks to pursue property beyond those instruments actually used to facilitate the crime upon which the conviction was founded: for it does not always follow that all that one owns has been obtained by illegal activity, and such facts not in evidence in the criminal trial are not therefore resolved. Thus, a jury trial would be appropriate.

I note that in this case the appellants were not previously convicted of a crime. Therefore, there has not been a prior adjudication of facts. As such I concur in the result in the present case to award the appellants a jury trial.