COMMONWEALTH of Pennsylvania

v.

The REAL PROPERTY AND IMPROVEMENTS AT 2338 N. BEECHWOOD STREET PHILADELPHIA, PA 19132.

**Appeal of Takeela Burney.**

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 2013.

Decided April 5, 2013.

Matthew D. Lee, Philadelphia, for appellant.

Alison J. Guest, Assistant District Attorney, Philadelphia, for appellee Commonwealth of Pennsylvania, Philadelphia District Attorney's Office.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

Takeela Burney (Claimant) appeals from the March 13, 2012 Order of the Court of Common Pleas of Philadelphia County (trial court), granting the Commonwealth of Pennsylvania's (Commonwealth) Forfeiture Petition (Petition) pursuant to the Controlled Substances Forfeiture Act (Forfeiture Act),[1] and ordering the forfeiture of Claimant's personal residence. Claimant argues, *inter alia*, that her due process rights were violated when she was not informed of her right to a jury trial. The issue before this Court is whether the quasi-criminal nature of a forfeiture of the personal residence of an individual who was never charged with a criminal violation in relation to the Property, requires more due process than was afforded to Claimant.

On July 26, 2011, the Commonwealth filed the Petition against 2338 N. Beechwood Street, Philadelphia, Pennsylvania (the Property), seeking forfeiture of the Property on several grounds; however, those relevant to this appeal are: (1) an alleged controlled purchase of crack cocaine for $20.00 between a confidential informant and two individuals, Kalisha Byrd and Frank Burney, occurred at the entry of the Property on May 6, 2010; (2) a search warrant executed at the Property on May 7, 2010 that resulted in the seizure of controlled substances and U.S. currency; and (3) the May 7, 2010 arrests of Frank Burney, Kalisha Byrd and Tob Martin pursuant to the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act).[2] (Petition at ¶¶ 1–12, R.R. at 7a–9a.)

Claimant did not file an Answer to the Petition, and neither Claimant nor the Commonwealth filed interrogatories or conducted discovery.[3] On March 13, 2012, a hearing on the Petition took place before the trial court.[4] At the hearing, the Com-

---

1. 42 Pa.C.S. §§ 6801–6802.

2. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101–780–144.

3. A Forfeiture Service Return Sheet included in the certified record provides that service was to be made upon Claimant at the address of the Property. However, the date of attempted service is blank, there are no signatures that service was ever attempted, no indication whether there was any response at the Property, or whether the Petition was left at the Property or by whom. The spaces for signature by a D.A. Representative, Badge, and D.C. numbers are blank. (Forfeiture Service Return Sheet, R.R. at 13a.) Section 6802(b) of the Forfeiture Act provides for notice to property owners by personal service or by certified mail. 42 Pa.C.S. § 6802(b). Section 6802(c) of the Forfeiture Act provides

for substitute service if the owner of the property is unknown or cannot be personally served or located; however, substitute notice requires an advertisement in one newspaper of general circulation in the county where the property shall have been seized, once a week for two successive weeks and the advertisement must contain specific information. 42 Pa.C.S. § 6802(c). Section 6802(e) of the Forfeiture Act waives notice automatically "when the owner, without good cause, fails to appear in court in response to a subpoena on the underlying criminal charges." 42 Pa.C.S. § 6802(e). However, in this case, there is no evidence that there were ever any underlying criminal charges against Claimant, the owner of the Property.

4. The trial court docket shows that the hearing had been "moved" three times and "continued" once before the actual hearing oc-

monwealth presented the testimony of Officer Eugene Kittles (Officer) of the Philadelphia Police Narcotics Division. Officer testified that on May 6, 2010, he met with a confidential informant who was given $20.00 of prerecorded buy money with instructions to purchase crack cocaine at the Property. Officer stated that after going to the Property and coming into contact with Kalisha Byrd, who had exited the Property, the confidential informant engaged Kalisha Byrd in conversation and gave her the $20.00. (Hr'g Tr. at 4, R.R. at 21a.) Officer testified that Kalisha Byrd returned to the Property and came into contact with Frank Burney.[5] Frank Burney handed Kalisha Byrd items that were later tested by the Philadelphia Police Narcotics Division in the presence of Officer and a colleague, which were determined to be two vials containing crack cocaine. (Hr'g Tr. at 4–5, R.R. at 21 a.)

Officer further testified that, on the following day, May 7, 2010, he and a colleague returned to the area near the Property to conduct surveillance, where they observed two females and three males approach the Property and meet with Kalisha Byrd separately; each time Kalisha Byrd would exit the Property the unknown individuals would hand her U.S. currency, and she would briefly return and hand items to the unknown individuals. (Hr'g Tr. at 5–6, R.R. at 21a–22a.) Officer stated that, later that day, he and two other officers executed a search warrant at the Property whereupon they: (1) confiscated fifteen jars of marijuana, empty jars, and $35 in U.S. currency from Tob Martin in the middle bedroom; (2) arrested Tob Martin; (3) found a photograph of Kalisha Byrd and Frank Burney and a Verizon phone bill containing Frank Burney's name and the address of the Property; (4) confiscated a bag containing a quarter ounce of cocaine and 24 vials of crack cocaine in the basement; and (5) confiscated $237 in U.S. currency from the living room. (Hr'g Tr. at 6–8, R.R. at 22a.) Officer stated that all of the confiscated drugs tested positive for cocaine base and marijuana. (Hr'g Tr. at 9, R.R. at 22a.) Officer noted that Kalisha Byrd and Frank Burney were arrested on a bus as they were nearing the 1700 block of 19th Street, apparently returning to the Property, and $337 in U.S. currency was then confiscated from Kalisha Byrd. (Hr'g Tr. at 8, R.R. at 22a.)

Claimant, who is indigent, appeared pro se at the hearing. Claimant did not present witnesses, cross-examine Officer, object to testimonial or documentary evidence, or attempt to assert the innocent owner defense or other constitutional challenges that may have been available to her. When it was Claimant's turn to cross-examine Officer's testimony, the trial court prompted Claimant by asking if she had any questions for Officer. Stating that she did, Claimant proceeded to make statements rather than ask questions. The trial court told Claimant that it was not her turn to tell her story and inquired whether she had any questions to which she replied, "Not at this time." (Hr'g Tr. at 9–10, R.R. at 22a–23a.)

 During the hearing, the trial court identified certain documents by Exhibit numbers: C–3—property receipts; C–4—chemical analysis; C–5—criminal extracts for Frank Burney, Jr. and Kalisha Byrd; and C–6—deed to 2336 N. Beechwood Street. (Hr'g Tr. at 10–11, R.R. at 23a.) The Commonwealth did not formally

---

curred. (Trial Court Miscellaneous Docket No. CP–51–M D–0008785–2011.)

5. The Petition alleges that Claimant is the mother of Frank Burney. (Petition ¶ 12, R.R. at 9a.).

move these documents into evidence before it rested.[6] At the conclusion of the hearing, the trial court ordered the Property forfeited and transferred to the custody of the Philadelphia District Attorney's Office. (Order at 1, R.R. at 25a.) Claimant, now represented by counsel, pro bono,[7] timely appealed to this Court.[8]

On April 30, 2012, the trial court issued an Order requiring Claimant to file a Concise Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure (1925(b) Statement), Pa. R.A.P. 1925(b), no later than May 21, 2012. By and through counsel, Claimant timely filed the 1925(b) Statement, contending that the trial court erred in: (1) concluding that the Commonwealth established a nexus; (2) concluding that the Commonwealth sufficiently established that the Property was unlawfully used, possessed, or otherwise subject to forfeiture; (3) failing to recognize that Claimant is an innocent, lawful owner of the Property and that any unlaw-

ful use or possession was without her knowledge or consent; (4) concluding that the Property was subject to forfeiture based upon a 2004 Agreement (Agreement)[9] because Claimant was not a party to the Agreement and the Commonwealth failed to prove that Claimant was aware of it; (5) failing to recognize that the forfeiture of the Property is constitutionally prohibited in violation of the Excessive Fines clause of Article I, Section 13 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution;[10] (6) not ensuring that Claimant, a pro se litigant, understood that she had a right to a jury trial and that she could assert affirmative defenses to the Petition, including an innocent owner defense; and (7) not appointing counsel for Claimant.

On August 13, 2012, pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(a), the trial court issued an Opinion in support of its Order granting the forfeiture of the

---

**6.** In its Opinion, the trial court relies upon this evidence to make certain findings as if the documents had been admitted.

**7.** On July 30, 2012, upon Claimant's counsel's verification pursuant to Rule 552(d) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 552(d), this Court granted Claimant's Application for Leave to Proceed in Forma Pauperis.

**8.** "An appellate court's scope of review in an appeal from a forfeiture proceeding is limited to examining whether findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." *Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street*, 574 Pa. 423, 427, 832 A.2d 396, 398 (2003). However, when the appeal hinges on questions of law, our review is plenary. *Id.* When reviewing for an abuse of discretion, a reviewing court may examine the entire record to determine whether it supports the rea-

sons set forth by the trial court in making its determination. *Commonwealth v. Smith*, 562 Pa. 609, 615, 757 A.2d 354, 357 (2000).

**9.** The Petition alleges that the Commonwealth entered into an Agreement with Winston Burney, Jr., alleged to be a former owner of the Property. (Petition ¶ 11, R.R. at 9a.) During the hearing, the Commonwealth stated to the trial court that: Claimant was the owner of the Property; the Property was transferred to Claimant from her brother; and the D.A.'s office should have been notified of the transfer to Claimant pursuant to the Agreement. (Hr'g Tr. at 6–7, R.R. at 22a.) However, the Commonwealth did not submit any evidence to prove the allegations stated in the Petition and the trial court neither made any factual findings about the Agreement nor relied upon it in ordering forfeiture of the Property.

**10.** The Fourteenth Amendment provides that "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Property. Therein, the trial court concluded that the Commonwealth had met its burden to prove, by a preponderance of the evidence, "that there was a nexus between the [P]roperty seized and illegal drug activity." (Trial Ct. Op. at 9.) The trial court found that "the [P]roperty was being used to facilitate the sale of illegal drugs." (Trial Ct. Op. at 9.) The trial court determined that Claimant failed to meet her burden of proof under Section 6802(j) of the Forfeiture Act [11] to establish, by a preponderance of the evidence, that she was an innocent owner. (Trial Ct. Op. at 10.) In addressing the alleged violations of Claimant's constitutional rights, the trial court stated that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal," and concluded that Claimant waived those issues pursuant to Rule 302(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 302(a). (Trial Ct. Op. at 11.)

The trial court rejected Claimant's argument that she should have been informed of her right to a jury trial because the trial court had no obligation to inform Claimant of such a right as "a petition for forfeiture is truly civil" and not criminal. (Trial Ct. Op. at 11.) The trial court concluded that Claimant waived any right to a jury trial because Claimant was bound by the deemed waiver of the civil rule, which states "that right shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty days after service of the last permissible pleading." (Trial Ct. Op. at 11 (citing Pa. R.C.P. No. 1007.1(a)).) The trial court contrasted the "deemed waiver" of Rule 1007.1(a) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1007.1(a), with the heightened requirements under Rule 620 of the Pennsylvania Rules of Criminal Procedure, Pa. R.Crim. P. 620, highlighting that the criminal rule contains a presumption that a defendant will proceed with a jury trial that can only be rebutted if both the defendant and the Commonwealth agree to waive this right, and if the waiver is knowing and intelligent. (Trial Ct. Op. at 12.) Reasoning that a forfeiture proceeding is quasi-criminal in nature, but civil in form, the trial court believed it was bound by the civil rule and, therefore, had no obligation to inform Claimant of her right to a jury trial. (Trial Ct. Op. at 12–13.)

Regarding Claimant's failure to raise the innocent owner defense or any other affirmative defenses, the trial court stated that pro se representation does not relieve a claimant of the duty to properly raise and develop applicable claims, that " 'any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of

---

11. 42 Pa.C.S. § 6802(j). Section 6802(j) of the Forfeiture Act provides as follows:

 (j) Owner's burden of proof.-At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:

 (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

 (2) That the claimant lawfully acquired the property.

 (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

 *Id.*

expertise and legal training will prove his undoing' " and that Claimant chose " 'to proceed pro se and [s] he cannot expect our court to act as [her] attorney.' " (Trial Ct. Op. at 13–14 (quoting First *Union Mortgage Corporation v. Frempong,* 744 A.2d 327, 337–38 (Pa.Super.1999)).)

The trial court dismissed Claimant's argument that counsel should have been appointed, citing *Commonwealth v. $9,847.00 U.S. Currency,* 550 Pa. 192, 200, 704 A.2d 612, 616 (1997) (holding that, in a case involving the forfeiture of currency as derivative contraband, the weighing of the three factors enunciated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), presented little likelihood of an erroneous deprivation of property and, therefore, weighed against a finding of a right to appointment of counsel). The trial court further stated that, even if Claimant had a right to counsel, Claimant never requested the appointment of counsel. (Trial Ct. Op. at 15.)

In this appeal, Claimant raises the following issues: [12] (1) whether Claimant's due process rights were violated when she was not informed of her right to a jury trial; (2) whether due process required the appointment of counsel in this case; (3) whether the forfeiture is unconstitutional as an excessive fine; (4) whether arguments concerning the Agreement between the Commonwealth and Winston Burney, Jr. were waived; (5) whether Claimant is an innocent owner; and (6) whether the

trial court erred in finding a nexus between the Property and a violation of the Drug Act that subjected the Property to forfeiture.

We first address Claimant's argument that her due process rights were violated when she was not informed of her right to a jury trial pursuant to Article I, Section 6 of the Pennsylvania Constitution [13] in proceedings involving the potential taking by the government of Claimant's personal residence, by forfeiture, as a consequence of alleged violations of the Drug Act by others.[14] The right to a jury is governed by Article I, Section 6 of the Pennsylvania Constitution. It is now well-settled that there is a right to a jury trial in an in rem forfeiture proceeding pursuant to the Forfeiture Act when there is an issue of fact as to whether the property seized is contraband. *Commonwealth v. One (1) 1984 Z–28 Camaro Coupe,* 530 Pa. 523, 532, 610 A.2d 36, 41 (1992). *See also Commonwealth v. 542 Ontario Street,* 989 A.2d 411, 414 (Pa.Cmwlth.2010) (stating that the jury would decide the factual questions relating to whether the Commonwealth was entitled to forfeiture of the real property and trial court determined the legal issue of whether forfeiture violated the Excessive Fines Clause); *Commonwealth v. $1,400 U.S. Currency,* 667 A.2d 452, 454 (Pa.Cmwlth.1995) (holding that the claimant had a right to a jury trial because an issue of fact as to whether the $1,400.00 seized at the time of his arrest was subject

12. We have re-ordered the issues.

13. Article I, Section 6 of the Pennsylvania Constitution provides:

 Trial by jury shall be as heretofore and the right thereof remain inviolate. The General [A]ssembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case.

 Pa. Const. art. I, § 6.

14. Claimant's due process argument also includes that she was not adequately informed of the hearing process by the trial court, including her right to call witnesses; issue subpoenas; object to the introduction of the Commonwealth's evidence, including chemical analyses of alleged drugs; introduce evidence of her own; and assert statutory and constitutional defenses. Therefore, she argues that she was deprived of a meaningful opportunity to participate in the hearing.

to forfeiture). Our Supreme Court has stated that:

> [T]here is a difference in Pennsylvania law as to the treatment of property which is, *per se,* illegal to possess, and property which is not, in itself, illegal ... in England, forfeiture actions in the Courts of Exchequer were tried before a jury, and in the United States, forfeiture actions were heard before juries in cases where Courts of Exchequer would have had jurisdiction. We conclude that the forfeiture action in this case has a common law basis, for it is the type of case-seizure on land of goods which the owner claims are not contraband-which would have been within the jurisdiction of the Courts of Exchequer, and later, American common law courts.

*One (1) 1984 Z-28 Camaro Coupe,* 530 Pa. at 528 n. 5, 531–32, 610 A.2d at 39 n. 5, 41 (footnote omitted). Because Claimant had the right to a jury trial here, we must determine whether the trial court erred in concluding that Claimant waived her right to a jury trial pursuant to Rule 1007.1 of the Pennsylvania Rules of Civil Procedure.

Rule 1007.1 of the Pennsylvania Rules of Civil Procedure provides, in relevant part:

> In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty days after service of the last permissible pleading. The demand shall be made by endorsement on a pleading or by a separate writing.

Pa. R.C.P. No. 1007.1(a). Rule 620 of the Pennsylvania Rules of Criminal Procedure provides, in relevant part:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa. R.Crim. P. 620. In thoughtfully wrestling with whether there was any obligation to inform Claimant in this forfeiture proceeding regarding the right to a jury trial or whether Claimant waived it, the trial court compared these two rules and reasoned that the civil rule, unlike the criminal rule, does not expressly require a trial court to ensure that a claimant is aware of the right to a jury trial, or that any waiver is knowing and intelligent. The trial court further stated that the civil rule effectively presumes that a claimant has waived a jury trial unless the claimant has filed a demand for such a trial. (Trial Ct. Op. at 12.) Reasoning that it was bound by the civil rule because a forfeiture proceeding is civil in form, even if quasi-criminal in nature, the trial court determined that there was no obligation to inform Claimant of her right to a jury trial. (Trial Ct. Op. at 13.)

 Subsequent to the trial court's Opinion, however, a plurality of this Court agreed that "[t]o the extent that any previous cases have applied the Rules of Civil Procedure to forfeiture actions, those cases are overruled." *Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive* (605 *University Drive),* 61 A.3d 1048, 1055 (Pa.Cmwlth. 2012) (plurality). *605 University Drive* reasoned that "[f]orfeiture proceedings, while nominally civil in nature, involve constitutional rights normally only involved in criminal proceedings." *Id.* at 1053. A majority of this Court agreed with the holding that there could be no summary judgment in a forfeiture case and that the

civil rules on summary judgment did not apply to the forfeiture action. In concluding that forfeiture proceedings are quasi-criminal punitive proceedings, *605 University Drive* relied upon cases by the United States Supreme Court holding that the Fourth and Fifth Amendment protections in criminal cases are applicable in forfeiture proceedings.[15] *Id.* at 1053; *United States v. United States Coin and Currency*, 401 U.S. 715, 721, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (holding that the Fifth Amendment applies to forfeiture actions); *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (holding that Fourth Amendment protections are applicable to forfeiture proceedings). As stated by the United States Supreme Court, forfeiture proceedings are "within the reason of criminal proceedings." *One 1958 Plymouth Sedan*, 380 U.S. at 698, 85 S.Ct. 1246 (quoting *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886)).

 "Due [p]rocess is ... a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant." *Corra v. Coll*, 305 Pa.Super. 179, 451 A.2d 480, 482 (1982). The right to procedural due process attaches where there is an alleged deprivation of a protected property or liberty interest. *Davenport v. Reed*, 785 A.2d 1058, 1062 (Pa.Cmwlth.2001). Where one's home is the subject of the forfeiture there is a property interest; but, there is also more at stake than property alone, for which the Pennsylvania Supreme Court recognized that a greater level of due process may be required. *$9,847.00 U.S. Currency*, 550 Pa. at 197, 704 A.2d at 615.[16] Therefore, because the forfeiture of one's home implicates the fundamental rights of "personal security," "personal liberty," and "private property" before such interests may be forfeited, we must inquire whether fundamental fairness has prevailed when Claimant was never notified that she had a right to a jury trial.

 In the forfeiture case of *Boyd*,[17] the United States Supreme Court ex-

---

**15.** The United States Supreme Court has also held that the Eighth Amendment applies to forfeiture proceedings. *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (holding that "a punitive forfeiture violates the Excessive Fines Clause [of the Eighth Amendment] if it is grossly disproportional to the gravity of a defendant's offense").

**16.** We note that the due process issues implicated in forfeiture cases are exacerbated when the claimant has never been convicted of a crime necessary to support the forfeiture proceeding, or even charged. *See generally Commonwealth v. 1978 Toyota*, 321 Pa.Super. 549, 468 A.2d 1125, 1126 (1983) (holding that conviction of a crime is not necessary to support forfeiture proceedings). "At common law, forfeiture could not attach unless there was a conviction, and evidence of that conviction was necessary to prove a forfeiture claim." *Commonwealth v. One 1988 Ford Coupe*, 393 Pa.Super. 320, 574 A.2d 631, 633

(1990). These cases did not involve the forfeitures of personal residences.

**17.** *Boyd* "held that compulsory production of an individual's private papers for use in a proceeding to forfeit his property for alleged fraud against the revenue laws violated both the Fourth Amendment and the Fifth Amendment's Self–Incrimination Clause." *United States v. Ursery*, 518 U.S. 267, 303, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (Stevens, J., concurring and dissenting). Justice Stevens stated that "[w]e reaffirmed *Boyd* twice during the span of time between our decisions in [*Waterloo Distilling Corporation v. United States*, 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931) ], and [*United States v. One Assortment of*] *89 Firearms*, [465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) ]," and in *One 1958 Plymouth Sedan*, 380 U.S. at 700, 85 S.Ct. 1246 the Supreme Court "unanimously repeated *Boyd's* conclusion that 'a forfeiture proceeding is quasi-criminal in character' and '[i]ts object, like a criminal

pressed concern about "the innocent [being] confounded with the guilty" and set forth principles affecting "the very essence of constitutional liberty and security," where one has not been convicted of a crime, stating that these principles:

> reach further than the concrete form of the case then before the court . . . they apply to all invasions on the part of the government and its employees of the sanctity of [one's] home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of [one's] indefeasible right of personal security, personal liberty[,] and private property, where that right has never been forfeited by his conviction of some public offense . . .

*Boyd*, 116 U.S. at 629–30, 6 S.Ct. 524.[18] The United States Supreme Court has also defined a "liberty" interest as follows:

> While this court has not attempted to define with exactness the liberty . . . guaranteed (by the Fourteenth Amendment), the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also . . . to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God

according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (citations omitted). Thus, in the context of the forfeiture of one's home, it is "[the] indefeasible right of personal security, personal liberty[,] and private property, where that right has never been forfeited by [the homeowner's] conviction of some public offense" that are implicated. *Boyd*, 116 U.S. at 630, 6 S.Ct. 524. Even though the property owner in a forfeiture proceeding "is not the nominal party, [s]he is, nevertheless, the substantial party to the suit" and "is entitled to all the privileges which appertain to a person who is prosecuted for a forfeiture of h[er] property by reason of committing a criminal offense."[19] *Id.* at 638, 6 S.Ct. 524. Our Supreme Court has stated that:

> Many of the most important rights guaranteed by the Constitution are rights of procedure without which the substantive rights of life, liberty and property would have little meaning. The procedures which constitute due process of law, like the right of an accused to trial by jury, are not ends in themselves but means of safeguarding these substantive rights. As Justice Frankfurter observed, "(t)he history of American freedom, is, in no

---

proceeding, is to penalize for the commission of an offense against the law.' " *Ursery*, 518 U.S. at 303, 116 S.Ct. 2135.

**18.** In the context of what kind of private papers qualify for Fifth Amendment protection, *Boyd* has subsequently been limited. *See, e.g., Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (carving out an exception by establishing that corporate books and records are not "private papers" protected by the Fifth Amendment).

**19.** The United States Supreme Court further stated that, because forfeitures are quasi-criminal, they are:

> within the reason of criminal proceedings for all the purposes of the [F]ourth [A]mendment of the [C]onstitution, and of that portion of the [F]ifth [A] mendment which declares that no person shall be compelled in any criminal case to be a witness against himself.

*Boyd*, 116 U.S. at 634, 6 S.Ct. 524.

small measure, the history of procedure."

*Commonwealth v. Wharton*, 495 Pa. 581, 587, 435 A.2d 158, 161 (1981) (quoting *Malinski v. New York*, 324 U.S. 401, 414, 65 S.Ct. 781, 89 L.Ed. 1029 (1945) (Frankfurter, J., concurring)). "[P]rocedural devices rooted in experience were written into the Bill of Rights not as abstract rubrics in an elegant code but in order to assure fairness and justice before any person could be deprived of 'life, liberty, or property.'" *Adams v. United States ex rel. McCann*, 317 U.S. 269, 276, 63 S.Ct. 236, 87 L.Ed. 268 (1942). In the context of criminal law, due process analysis has led to the conclusion that a criminal defendant may waive his right to a jury trial but, for a waiver to be valid, it must be an "'intentional relinquishment or abandonment of a known right or privilege, and the accused must be aware of the 'essential' protections inherent in a jury trial as well as the consequences attendant upon a relinquishment of those safeguards.'"[20] *Commonwealth v. Hayes*, 408 Pa.Super. 314, 596 A.2d 874, 876 (1991) (quoting *Commonwealth v. Quarles*, 310 Pa.Super. 74, 456 A.2d 188, 191 (1983)). "All necessary requirements for a knowing and intelligent waiver of a jury trial are present if the trial court conducts an on-the-record colloquy, including the essential elements of a trial, and the defendant has signed a written waiver." *Commonwealth v. Dunn*, 424 Pa.Super. 521, 623 A.2d 347, 348 (1993). "[I]n a jury waiver colloquy a defendant must be informed of the essential protections in a

jury trial as well as the consequences attendant upon a relinquishment of those safeguards." *Quarles*, 456 A.2d at 191. "The essence of due process is fundamental fairness in view of all facts and circumstances of a case." *Mercy Convalescent Home, Inc. v. Department of Public Welfare*, 96 Pa.Cmwlth. 217, 506 A.2d 1010, 1013 (1986). "And, of course, even those protections associated with criminal cases may apply to a civil forfeiture proceeding if it is so punitive that the proceeding must reasonably be considered criminal." *Austin v. United States*, 509 U.S. 602, 608, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). It is difficult to imagine a more punitive result than the forfeiture of one's home and personal residence when not only are there no convictions of the homeowner for any of the underlying offenses that could result in forfeiture, but no charges have ever been alleged or filed against the owner of the home.

In accord with *605 University Drive*, we hold that Rule 1007.1 of the Pennsylvania Rules of Civil Procedure does not apply. Being a civil rule, Rule 1007.1 does not address the due process concerns that are implicated in this quasi-criminal proceeding when one's personal residence could be forfeited and result in eviction and homelessness. As a matter of due process, any waiver of the right to jury trial must be knowing, intelligent, and on the record.

We recognize that there is an extensive legal history to forfeitures[21] and

---

20. "Innumerable cases of the Supreme Court of the United States recount that trial by jury developed as a procedural safeguard for the accused against arbitrary and oppressive law enforcement." *Wharton*, 495 Pa. at 587–88, 435 A.2d at 161 (citing *Ballew v. Georgia*, 435 U.S. 223, 229, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978); *Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *Dun-*

*can v. Louisiana*, 391 U.S. 145, 151–56, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Singer v. United States*, 380 U.S. 24, 27–31, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); *Adams*, 317 U.S. at 276, 63 S.Ct. 236).

21. Forfeiture proceedings trace their origins to ancient practices where, sitting in judgment of inanimate objects in ancient Greek

that the forfeiture of cash, contraband, and instrumentalities of crime does have a role to play in fighting drug-related crimes. We have a deeply held appreciation for law enforcement and the officers who work on the front lines to protect our families and communities. We understand the importance of depriving criminals the proceeds of their crimes, and the need to make our communities safer by reducing violence and drug activities by eliminating the safe houses which provide sanctuary to those activities and perpetrators; however, it is also our obligation to assure that these laudable goals are achieved within constitutional boundaries. These boundaries become more apparent where there is no alleged criminal conduct of the homeowner, the taking of whose home may result in eviction and homelessness to the homeowner and perhaps even several generations of a family, by the use of civil forfeiture proceedings.[22]

Here, the record establishes that Claimant was not informed that she had a right to a jury trial at any stage of the proceedings below—not by the Petition, the Notice to File an Answer to Petition, the Commonwealth, or the trial court. The certified record contains a copy of the Notice to File an Answer to Petition informing Claimant that she was required to file an Answer within thirty days of service; however, this did not inform Claimant of her right to a jury trial.[23] There is no evidence of record establishing that the Commonwealth informed Claimant of her right to a jury trial. When Claimant appeared at the hearing, indigent and pro se, facing the risk of ultimately losing her home although no criminal charges related to the violation of the Drug Act had been presented against her, there was no colloquy between the trial court and Claimant about whether she understood that she had a right to a jury trial and whether she

civilization, "we banish beyond our borders sticks and stones ... if they chance to kill a man." Ernest H. Short, *Civil Forfeiture of Real Property and the Civil Asset Forfeiture Reform Act of 2000*, 73 Okla. B.J. 1727 & n. 9 (2002) (citing Myers, H. and Brzostowski, *Drug Agents' Guide to Forfeiture of Assets 1* (1981) (quoting Aeschines the Greek (389–314 B.C.))). However, the United States Supreme Court has stated that "[e]ven Blackstone, who is not known as a biting critic of the English legal tradition, condemned the seizure of the property of the innocent as based upon a 'superstition' inherited from the 'blind days' of feudalism." *U.S. Coin and Currency*, 401 U.S. at 720–21, 91 S.Ct. 1041. And the Supreme Court further stated that it has recognized "the difficulty of reconciling the broad scope of traditional forfeiture doctrine with the requirements of the Fifth Amendment." *Id.* at 721, 91 S.Ct. 1041.

The immediate ancestor of modern civil forfeiture law is English admiralty law where ships, the most living of inanimate things, were treated as if endowed with personality and given a gender. Holmes, Jr., The Common Law 25 (1881). After the creation of the

United States, violations by ships and their cargo were made subject to civil forfeiture under the customs laws. *Id.* at 26. A brief overview of the legal history of forfeiture can be found in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678–87, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

22. "Forfeiture is a harsh and oppressive procedure which is not favored by the courts." *United States v. $31,990 in U.S. Currency*, 982 F.2d 851, 856 (2d Cir.1993) (quotation marks omitted). "While congress may have intended civil forfeiture to be a powerful weapon in the war on drugs, it would, indeed, be a Pyrrhic victory for the [Commonwealth], if the government's relentless and imaginative use of that weapon were to leave the [C]onstitution itself a casualty." *United States v. Lasanta*, 978 F.2d 1300, 1305 (2d Cir.1992) (internal quotation marks and citations omitted), *abrogated on other grounds by Florida v. White*, 526 U.S. 559, 564, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999).

23. Additionally, there is no proof of service of the Petition or the Notice to File an Answer to Petition in the record.

had waived that right. In fact, after the hearing had begun and Officer began to testify, the trial court stopped Officer in his testimony questioning why Claimant was present and what her standing was in this case, believing "according to the stipulation the other individual [Winston Burney, Jr.], I guess, was the owner of the property." (Hr'g Tr. at 6, R.R. at 22a.) This supports the possibility that the trial court did not realize at the outset of the hearing that Claimant was the homeowner facing the loss of her home.[24]

. Because of our disposition of this case, we do not reach Claimant's other issues. Accordingly, we vacate the Order of the

---

**24.** The present case may also skirt the boundaries of due process implicating the right to counsel. In *$9,847.00 U.S. Currency*, 550 Pa. at 197–200, 704 A.2d at 614–16, the Pennsylvania Supreme Court balanced the three factors that must be weighed to determine whether there is a right to court-appointed counsel and held, in a case involving the forfeiture of U.S. currency and drug paraphernalia but not a person's home, that the factors balanced against the existence of a right to counsel. The three factors to be balanced are set forth in *Mathews*, 424 U.S. at 335, 96 S.Ct. 893:(1) the private interest at stake; (2) the government interest at stake; and (3) the likelihood of an erroneous decision or deprivation. In *$9,847.00 U.S. Currency*, 550 Pa. at 197, 704 A.2d at 615, the convicted claimant's interest at stake was in the currency and drug paraphernalia, but not in his home. The state's interest "is also largely financial, both in terms of the financial proceeds arising from the forfeiture, and in terms of the financial cost of providing counsel to indigent claimants" but, whatever the State's interest, it is not advanced when the wrong person is being punished, such as a homeowner who has never been charged or convicted. *Id.* at 198, 704 A.2d at 615.

Here, the private interest is greater because not just currency, paraphernalia, or motor vehicles are being forfeited, but one's home and personal residence, thereby evoking the life and liberty interests as expressed in *Boyd*, 116 U.S. at 629, 6 S.Ct. 524, and still considered authoritative by the United States Supreme Court. *One 1958 Plymouth Sedan*, 380 U.S. at 698, 85 S.Ct. 1246. When a person's home and homelessness are at stake, which also implicates liberty interests, the three factors to be balanced pursuant to *Mathews* would likely balance differently. For, unlike in *$9,847.00 U.S. Currency*, Claimant's interest in her home is different than an interest in cash, and the risk of an erroneous decision or deprivation is not minimal here, but great, because the homeowner has never been charged or alleged to be involved in the underlying criminal activity. It does not appear that Claimant understood or appreciated that she could assert the innocent owner defense or that she could raise the Eighth Amendment argument that the forfeiture of her home would constitute an excessive fine in this case. Claimant also did not have any notice from any source that she had the right to a jury trial. Moreover, the allocation of burdens and standards of proof requires that Claimant prove a negative, thereby creating a great risk of erroneous deprivation. Indigent claimants who have been charged with criminal violations may have access to counsel as a result of those charges; however, claimants who face the loss of a home without having been charged for any underlying violations for which forfeiture is authorized by statute presently have no right to counsel under the Forfeiture Act or case law in Pennsylvania.

Concern about the potential for due process violations in the federal forfeiture procedures motivated Congress to enact the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983, which provides a right to counsel for indigent homeowners. *See* Cong. Rec., 106 Congress, 1999–2000, S1753–1762. Because a forfeiture action can result in a claimant's eviction and homelessness, and there is more at stake than just a property interest, CAFRA provides as follows:

If a person with standing to contest the forfeiture of property in a judicial civil forfeiture proceeding under a civil forfeiture statute is financially unable to obtain representation by counsel, and the property subject to forfeiture is real property that is being used by the person as a primary residence, the court, at the request of the person, shall insure that the person is represented by an attorney from the Legal Services Corporation with respect to the claim. 18 U.S.C. § 983(b)(2)(A). Had Claimant been represented by counsel at the hearing, her due process rights may have been protected.

trial court and remand this matter for a new hearing in accordance with this decision.

### ORDER

NOW, April 5, 2013, the Order of the Court of Common Pleas of Philadelphia County entered in the above-captioned matter is **VACATED** and this matter is **REMANDED** for a new hearing consistent with the foregoing opinion.

Jurisdiction relinquished.

Judge SIMPSON concurs in the result only.

## CONCURRING OPINION BY President Judge PELLEGRINI.

I join with the well-reasoned majority opinion that a person whose property is being forfeited under the Forfeiture Act (Forfeiture Act), 42 Pa.C.S. §§ 6801–6802, must be informed of his or her right to a jury trial at the hearing and join in the majority's disposition of the appeal. I write separately to add that there are other rights that a person whose property is being forfeited must be informed of either prior to or at the required hearing on forfeiture.

The United States and the Pennsylvania Supreme Court have provided that persons whose property is being subject to forfeiture have certain constitutional rights in opposing a forfeiture proceeding. In addition to the constitutional right to a jury trial,[1] those courts have held that a person whose property is being subjected to forfeiture has a constitutional right against self–incrimination;[2] a constitutional right against the imposition of excessive fines;[3] and the right to interpose the "innocent owner defense."[4] I would hold that due

---

**1.** *See Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive*, 61 A.3d 1048, 1053 (Pa.Cmwlth.2012) ("Not only is a hearing required, under Article I, Section 6 of the Pennsylvania Constitution, a property owner is entitled to a jury trial in a forfeiture action to decide whether the property seized is contraband.") (citation and footnote omitted).

**2.** *See Austin v. United States*, 509 U.S. 602, 608 n. 4, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) ("[T]his Court's decisions applying constitutional protections to civil forfeiture proceedings have adhered to this distinction between provisions that are limited to criminal proceedings and provisions that are not. Thus, the Court has held that the Fourth Amendment's protection against unreasonable searches and seizures applies in forfeiture proceedings, but that the Sixth Amendment's Confrontation Clause does not. It has also held that the due process requirement that guilt in a criminal proceeding be proved beyond a reasonable doubt ... does not apply to civil forfeiture proceedings. The Double Jeopardy Clause has been held not to apply in civil forfeiture proceedings, but only in cases where the forfeiture could properly be characterized as remedial. Conversely, the Fifth Amendment's Self–Incrimination Clause, which is textually limited to 'criminal case[s],' has been applied in civil forfeiture proceedings, but only where the forfeiture statute had made the culpability of the owner relevant, or where the owner faced the possibility of subsequent criminal proceedings. And, of course, even those protections associated with criminal cases may apply to a civil forfeiture proceeding if it is so punitive that the proceeding must reasonably be considered criminal.") (citations omitted).

**3.** *See Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street*, 574 Pa. 423, 428, 832 A.2d 396, 399 (2003) ("It is settled law in Pennsylvania that a forfeiture effected pursuant to the Forfeiture Act is a fine and thus subject to review under the Excessive Fines Clause.") (citation omitted).

**4.** *See* 42 Pa.C.S. § 6802(j) which states:
(j) **Owner's burden of proof.**—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:

process requires that the person whose property is subject to forfeiture, in addition to the right to a jury trial, be provided with notice of all of these rights and, as a matter of due process, that the Commonwealth must demonstrate that the waiver of those rights at the hearing was knowing and intelligent.

In addition, due process requires that visible notice be given in the forfeiture petition to inform the person whose property is being forfeited that the petition institutes a proceeding that could result in the loss of the property; that the failure to appear at the hearing may result in the property being forfeited in his or her absence; and that legal counsel should be obtained and where legal services can be obtained if he or she cannot afford counsel.[5]

Judges LEAVITT and McCULLOUGH join in this concurring opinion.

---

 (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.
 (2) That the claimant lawfully acquired the property.
 (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

5. Pennsylvania Rule of Civil Procedure 1018.1, promulgated to satisfy due process concerns, contains the type of notice that should be given. It provides, in pertinent part:

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.
IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

____
(Name)
____
(Address)
____
(Telephone Number)
Pa. R.C.P. No. 1018.1(b).